**ALICE FAIR, et vir, v. TAMPA ELECTRIC COMPANY**

27 So. (2nd) 514
October 8, 1946
Rehearing denied Oct. 29, 1946

June Term, 1946
Division B

*Raleigh T. Barber* and *R. G. Tittsworth,* for appellants.
*Sam Bucklew,* for appellee.

THOMAS, J.:

Suit was brought by appellants to recover damages alleged to have been sustained because of the negligent operation of appellee's street car. The jury returned a verdict in favor of appellants, and final judgment was entered on 28 October, 1941.

Three days after entry of the judgment a motion for new trial was filed, and on 7 November, 1941, it was denied. Three weeks later (on 28 November) the appellee filed a motion to set aside the verdict and judgment and grant a new trial, representing that it had learned since the entry of the order denying the motion for new trial that a witness for appellants, who had testified he was on the street car at the time of the mishap and purported to relate what had occurred, was not there at all and that his entire story was a fabrication. It was charged that the witness had repudiated his testimony and that the judgment therefore had been procured through fraud. Appellant moved to strike this motion, and evidently the term of court expired without a ruling on either motion. On 13 July of the following year appellee was permitted to withdraw the motion of 28 November "without prejudice to its right to file any other motion in said cause, as it may be advised." The same day it presented a "motion for stay of execution and vacation of judgment." This motion set up the matter of the alleged fabricated testimony, and in addition charged that the testimony was given at the insistance of appellants' attorney, Raleigh T. Barber. It was prayed that, a fraud having been perpetrated on the court and on appellee, no execution issue to enforce the judgment. The circuit judge, Honorable L. L.

Parks, determined from witnesses he heard that the false testimony in the original trial was given under the direction of the attorney named, who knew when it was introduced that it was perjured, and the judge decided that this manufactured testimony was material and influenced the verdict. He therefore ordered the execution stayed and the "cause . . . remanded to the trial docket." He also decided that the last motion was a substitute, filed after expiration of the fall (1941) term by permission of the court, for the motion of 28 November, 1941, filed during that term, and that the latter "carried forward into the Spring Term of 1942 jurisdiction to hear and determine" the motion last made and disposed of by the order now being reviewed.

Appellants have presented six questions, but we are inclined to agree with appellee that but two points need consideration: the existence of jurisdiction in the court and the sufficiency of the fraud to justify the order.

That rank fraud was perpetrated upon the adversary of the appellants and upon the court was definitely established by the testimony taken before the circuit judge, and it is no sufficient refutation to say that the case of the appellants was amply proved by other witnesses wherefore the perjurer's testimony was merely cumulative and the judgment should not have been disturbed. Certainly the appellants relied upon this testimony and vouched for the witness when they introduced him in their behalf, and it is perfectly clear that his story, coming as it did from the only witness describing himself as a passenger on the bus seated at a vantage point near the entrance to the vehicle at the time of the mishap, was very material to the issues in the case.

The appellants have cited to us decisions giving the distinction between extrinsic and intrinsic fraud, basing their argument with reference to this phase of the case on the proposition that the court having lost jurisdiction at the time the order under review was entered, fraud only of the former character could support a successful assault on the judgment. They insist that the fraud, if any, committed by the witness and by their counsel was *intrinsic*, hence could not have justified the court in staying the execution. Our attention has

been drawn by them to the opinion of this court in Alabama Hotel Company v. J. L. Mott Iron Works, 86 Fla. 608, 98 So. 825, holding that a court loses control of its orders when the term at when they are rendered expires. Kroier v. Kroier, 95 Fla. 865, 116 So. 753. Reference in the appellants' brief is then made to the decision of the United States Circuit Court of Appeals of the Ninth Circuit, Nelson v. Meehan, 155 Fed. 1, 12 L.R.A. (N.S.) 374, where it was held that a court of equity would not, on account of fraud, annul a judgment after the end of the term unless the fraud relied upon was extrinsic or collateral as distinguished from intrisic, giving as authority the decision of the Supreme Court of the United States in United States v. Throckmorton, 98 U.S. 61, 25 L. Ed. 93. This rule seems to have been followed in numerous other decisions such as Pico v. Cohn, 91 Cal. 129, 25 Pac. 970.

In the decisions which we have studied it is held that perjury (Vance v. Burbank, 101 U.S. 514, 25 L. Ed. 929; Pico v. Cohn, supra) or even subordination of perjury (Maryland Steel Company v. Marney, 91 Md. 360, 46 Atl. 1077) does not constitute extrinsic fraud. Illustrations of fraud of this character are given in the opinion in United States v. Throckmorton, supra, as prevention of an unsuccessful party presenting his case, by fraud or deception practiced by his adversary; keeping the opponent away from court; falsely promising a compromise; ignorance of the adversary about the existence of the suit or the acts of the plaintiff; fraudulent representation of a party without his consent and connivance in his defeat; and so on.

From the authorities we have consulted we are convinced that it is a universal rule that in cases of attacks on judgments via chancery suits to set them aside because of fraud it is necessary that the fraud be extrinsic as distinguished from intrinsic, the reasoning of the courts being that if this restriction were not placed on suits of this kind litigation would become interminable; so the rule is invoked even though injustice may result in individual instances.

But we think a determination of the present controversy depends as much on the nature of the attack as upon the character of the fraud, for here there was no suit in equity or

separate proceeding to assail the judgment, the matter having been presented in the same action by the motions we defined at the outset. Thus our decision hinges on the presence or absence of jurisdiction of the circuit court at the time he heard the testimony, adjudicated the existence of fraud, and stayed execution.

The appellee has drawn our attention to Section 55.38, Florida Statutes, 1941, and F.S.A., providing that the court may for good cause direct the stay of an execution returnable to it and suspension of proceedings on the execution. This was the kind of motion eventually made by the appellee in this case, and we think the court had the right to entertain it. True, the time for filing a motion for new trial had expired; in fact, a motion for new trial had been made and denied. Correct also is the assertion of the appellants that the term had ended and that the motion eventually relied upon was filed within the new term.

Much is said in the briefs supporting and assailing the position that the motion undisposed of at the end of the term during which the judgment was entered worked a continuation of the cause until the next term and thereby reserved to the court the right to rule upon the motion now in question. We doubt if it is necessary for us to delve into the law on this point because of the statute, 55.38, supra, which places no limitation upon the time to move for the stay. By its terms a court to which an execution is returnable is empowered to direct the stay if the cause shown is meritorious and notice has been given the adverse party. This court in the case of Kellerman v. Commercial Credit Company, 138 Fla. 133, 189 So. 689, applied the statute to a situation where fraud, mistake, and surprise were established.

We have re-examined the original file in the case of Kellerman v. Commercial Credit Company, supra, to determine just what sort of fraud appeared there to justify the entry of the order staying the execution, and we have found that defendant's demurrer and pleas had been stricken without notice and judgment by default entered against the defendant. This was done on 27 October, 1927. The order was withheld by plaintiff's counsel until 6 March, 1928, on which day, without

notice to the defendant, a jury was empaneled which found a verdict in plaintiff's favor, whereupon judgment was entered and execution issued immediately. The defendant represented that inasmuch as the order striking the demurrer and pleas and entering the default was not placed on the docket to serve notice of what had been done he was "lulled into a perfect security that [his] demurrer and pleas were sufficient in law . . . " In these circumstances execution was permanently stayed, 109 days after its issuance.

We realize that if the attorney for the plaintiff in that case deliberately withheld from the record an order striking the defendant's demurrer and pleas without notice and entering the default, then took advantage of his adversary, his actions fell in the category of extrinsic fraud; however, we are unwilling to extend and recognize that distinction where motions for stays are made under the statute. Such attacks are not independent proceedings and are evidently authorized in order that the court may control the procedure to enforce its own judgments. The statute contains no provision with reference to the time within which such a motion may be made, nor is there in it any indication of what constitutes "good cause." For the purposes of such a motion under this act we are unable to discern any material difference between withholding an order from the file and inducing a witness to give false testimony. From a moral standpoint the latter seems more reprehensible, and from a practical standpoint probably more difficult to uncover.

We realize that it could be very plausibly argued that because of the rules which we have related the judgment in this case should not be disturbed, the fraud proved being intrinsic in nature. In truth, counsel for the appellants has made a very plausible argument to that effect. But in arriving at our conclusion we do not think that logic or reason prevents our holding that the circuit judge was warranted in halting the enforcement of a judgment which he was convinced, upon abundant testimony, was founded on testimony perjured, on perjury suborned by counsel for the plaintiff. He knew that the defendant in the case and the court itself had been deceived.

We are unwilling to subscribe to a rule that if a lawyer stealthily fabricates testimony the judge of the court must stand by, powerless to halt the enforcement of the judgment based upon falsehood, simply because by the passage of time the period for filing motion for new trial has elapsed and the term of the court has ended.

We think the eminent circuit judge moved correctly in staying the execution; Whether he should have remanded the cause to the trial docket is a matter we do not decide because we do not understand that it has been presented for our decision.

Affirmed.

CHAPMAN, C. J., BROWN and SEBRING, JJ., concur.

27 So. (2nd) 521 June Term, 1946
October 8, 1946 Division B