62 So.2d 897 (1953)
CARLOR CO., Inc.
v.
CITY OF MIAMI.
Supreme Court of Florida, en Banc.
January 30, 1953.
*898 Evans, Mershon, Sawyer, Johnston & Simmons, Miami, Keen, O'Kelley & Spitz, Tallahassee, Otho S. Bowling, New York City, Herbert S. Sawyer, Miami, J. Velma Keen, Tallahassee and M. Lewis Hall, Miami, for appellant.
Walton, Hubbard, Schroeder, Lantaff & Atkins, John H. Wahl, Jr., John E. Cicero and S.O. Carson, Miami, for appellee.
*899 MATHEWS, Justice.
This is an appeal from a final decree in a suit making a collateral attack upon a final judgment in an eminent domain proceeding in the Circuit Court of Dade County.
An able and experienced Circuit Judge rendered an opinion, contained in the decree dismissing the complaint, dated February 21, 1952. The opinion, among other things, contained the following:
"In April 1943 the City of Miami instituted condemnation proceedings to acquire plaintiff's lands `for port and airport purposes to be used by the City of Miami and its inhabitant.'
"The case was tried to (sic) a jury which, on August 11, 1944, returned a verdict awarding the Carlor Company, Inc. the sum of $255,000.00 as compensation for the taking. On August 14, 1944, final judgment was entered. On August 17, 1944, the City deposited the award in the registry of the court, and pursuant to an order of disbursal dated August 21, 1944, Carlor Company, Inc., accepted the award.
"There was neither a motion for a new trial nor an appeal from the final judgment.
"The lands involved were situated on Virginia Key, an island separated from the mainland by Biscayne Bay. At the time of the condemnation proceedings these lands were inaccessible except by boat and they were undeveloped and unimproved.
"Since the conclusion of the condemnation proceedings a causeway has been erected between the mainland and Virginia Key. Being now thus readily accessible the value of the lands on Virginia Key has been tremendously enhanced.
"As the reasons for setting aside the final judgment of condemnation, Carlor Company, Inc., asserts:
"1. That there was an insufficiency of description in the Resolutions authorizing the taking;
"2. That the quality of the title sought by the City was not properly determined, i.e., its Resolutions did not specify a fee simple title so that the City acquired at most a mere easement;
"3. That the condemnation should have been effected by the Greater Miami Port Authority rather than the City itself; and
"4. That fraud on the part of the City permeated the proceedings.
"A final judgment in condemnation cannot be collaterally attacked by such objections as (1), (2) and (3). Nichols on Eminent Domain, 2nd Ed., Vol. 2, Sec. 395; 29 C.J.S., Eminent Domain, § 326, pp. 1363-1364.
"The remaining objection, i.e., that fraud permeated the proceedings and vitiates the final judgment is based upon the proposition that while the City condemned these lands for the obtensible purpose of utilizing them for port and airport purposes, the fact remains that they have never been so utilized, and the City knew but did not disclose that such would be the inevitable result; this for the reason that the Secretary of War of the United States had flatly rejected the City's request for Federal funds to finance the port and airport project because the project was not necessary in the interests of national defense. Plaintiff asserts that this information was given to the City in a letter from the Secretary of War dated October 10, 1943, which letter, in the interests of national security, was restricted or classified as a military secret and was not unclassified or released as public information until 1945 and not printed until 1947. In passing it might be noted that this suit was not instituted until July 11, 1951, seven years after final judgment was entered, six years after the Secretary's letter was released, and four years after it was printed. Meanwhile, and for the main part, since the information became public, the Causeway to Biscayne Key has been completed with the result, as previously stated, that the lands which were formerly inaccessible and undeveloped, have now increased in value several fold.
"Be that as it may, the objection is based upon a letter which was entirely irrelevant. The condemnation proceeding did not recite that the City's purpose in taking these lands was for or in any way connected with the National Defense. It recited an intended *900 municipal use as, indeed, it could only recite.
"Concerning the failure of the City up to this time to utilize the lands for the purpose stated in the condemnation petition, it should be observed that substantially the same challenges against the good faith of the City were either raised or could have been raised and adjudicated in the condemnation proceedings. Charges of bad faith of the same general character were included in the answer and amended answer of Carlor Company, Inc., in the condemnation suit. The complaint in the instant proceedings merely goes into greater details and particulars. The substance is the same. If the Court, in the condemnation proceedings, erred in striking such matter from Carlor Company's answer and amended answer, that error should have been corrected by an appeal from the final judgment. It is well established that the rules governing the application of the doctrine of res judicata are applicable to condemnation judgments and that the parties are concluded as to all matters which were put in issue or might have been put in issue or were necessarily implied in the decision of the trial court such as the right to condemn and the legality of the proceedings. It is immaterial that the point adjudicated may have been erroneously decided. If it was, the owner should have corrected the error by appeal and cannot now do so by a collateral attack upon the final judgment. 29 C.J.S., Eminent Domain, § 328, pp. 1368-1369; City of Miami v. Osborne, Fla., 55 So.2d 120, decided November 20, 1951. It is likewise established law that there is no reversion where the fee simple title is taken and there is either a failure to use or a discontinuance of the use which impelled the taking. Nichols on Eminent Domain, 2nd Ed., Vol. 2, page 1421; McQuillan on Municipal Corporations 3rd ed., Vol. 11; page 518, and cases there cited; 18 Am.Juris. 750, Eminent Domain, Section 127."
Thereafter the appellant, with the permission of the court, filed an amendment to the complaint. The appellee then filed motion to dismiss the complaint, as amended, and a motion for summary final decree. In due course summary final decree was entered against the appellant and, among other things, said decree contained the following:
"Ordered, adjudged and decreed that in respect of the Complaint as Amended the Court adheres to its Opinion and Order dated February 21, 1952 and for the reasons stated therein hereby enters a Summary Final Decree in favor of the defendant and against the plaintiff."
There can be no question that under Section 11, Article V of the Constitution and Section 73.01 et seq., F.S.A., the Circuit Court had exclusive jurisdiction of the original suit in eminent domain. The description of the property sufficient for identification, the estate or interest in the property sought to be acquired by the petitioner, parties, nonjoinder and misjoinder, and necessity for taking, were matters cognizable by and within the jurisdiction of the Circuit Court in the original eminent domain proceedings, and were determined by it. There was no appeal from the final judgment. It is elementary that a condemnation judgment or award cannot be collaterally attacked except in cases of fraud or where it is void as for want of jurisdiction. As to such matters, res adjudicata applies. 29 C.J.S., Eminent Domain, § 326 et seq., p. 1363; 18 Am.Jur., p. 1008, Sec. 367 et seq.; City of Miami v. Osborne, Fla., 55 So.2d 120.
It is insisted, however, that the Circuit Court was without jurisdiction because the original resolution adopted by the City Commission of the City of Miami did not specify that the city sought to acquire a fee-simple title in the property and that the state and county where the land was located was not specified. An examination of the record shows that the appellee did not question the sufficiency of the description of the property or that the city did not seek to acquire a fee-simple title. When the original petition in eminent domain was filed, the Circuit Court acquired complete jurisdiction. If the appellant thought there was any deficiency in the description of the land or the interest or estate in the property sought to be acquired, the appellant had ample opportunity to raise these questions and it *901 was its duty to do so. The record fails to show that the appellant at any time questioned the sufficiency of the description or the interest or estate in the property sought to be acquired. As a matter of fact in the eminent domain petition, filed in the Circuit Court, it was specifically set forth that the city sought to acquire "the fee simple title in and to", etc. In the prayer of the petition, the petitioner prayed that the property described in the petition be vested "in your petitioner in fee simple." In the answer and the amended answer filed by the appellee, it admitted "that the interest or estate in said property sought to be acquired is the fee simple title therein". In the final judgment it was ordered that the property "is hereby appropriated to the City of Miami, a municipal corporation of the State of Florida, in fee simple."
It is next urged by the appellant that during the pendency of the eminent domain proceeding the Legislature by special act created the Greater Miami Port Authority and that it was given the power of eminent domain, that it had complete power and authority to condemn the property for port and airport purposes and that it was not made a party to the suit, and, therefore, the judgment was void. The real party in interest was the City of Miami, a municipal corporation. The City Commission and the Greater Miami Port Authority are Boards of the city and any property acquired by the activities of either of said Boards would naturally and necessarily be for the benefit of the real party in interest, that is, the City of Miami, a municipal corporation.
After the enactment of Chapter 22303, Laws of Florida, Special Acts of 1943, while the eminent domain suit was pending, everyone knew or was chargeable with notice of the creation of the Port Authority and of its powers and duties. The record shows that the appellant had actual notice and injected the same into the condemnation proceedings by a part of its amendment to its answer in the eminent domain proceedings, reading as follows:
"That the Port Authority as now constituted does not intend to use the said land for port or airport purposes but is seeking other sites which are more adaptable for the uses described in said petition, etc."
The question of parties, nonjoinder and misjoinder of parties, may be present in any suit and such question may be raised at the proper time. With full knowledge of the existence of the special act above mentioned creating the Port Authority, and after having injected the same into the proceedings, such question cannot now be raised in an attempt to show that the Circuit Court was without jurisdiction where the eminent domain proceeding proceeded to final judgment and there was no appeal, as provided for and required by law. In § 328 of the article on Eminent Domain, p. 1368 of 29 C.J.S., the author states:
"In accordance with the rules governing the application of the doctrine of res judicata to judgments generally with regard to matters concluded thereby, see [50] C.J.S., title Judgments, §§ 712-736, also 34 C.J., p. 902, note 89  p. 946, note 94, parties and their privies are concluded as to all matters which were put in issue, or might have been put in issue, or were necessarily implied in the decision, in the condemnation proceedings, such as the right to condemn, and the legality of the improvement, the necessity and the quantity of land required and taken, compliance with the various steps required to be taken in the proceedings, the ownership and condition of the title, the benefits to land not taken, and the amount and items of compensation. It is immaterial that the point adjudicated was erroneously decided, since the owner should have proceeded to correct the error in that proceeding."
See also City of Miami v. Osborne, Fla, 55 So.2d 120; Lovett v. Lovett, 93 Fla. 611, 112 So. 768; Allen v. Huntington, 2 Aik., Vt. 249, 16 Am.Dec. 702; Common Law Rule 17; Sections 45.01 and 45.06 F.S.A.
The question of necessity to acquire the property for the purposes in question was likewise concluded by the proceedings in *902 eminent domain, including the final judgment and the fact that there was no appeal, unless the question of determination of necessity was the result of fraud. The collateral attack upon the final judgment in the eminent domain proceedings contains general allegations of fraud coupled with specific acts which the appellant claims constitute fraud.
The general allegations of fraud are wholly insufficient. The specific allegations of fraud relate to a letter from the Secretary of War, dated October 10, 1943, which has been fully covered in the opinion of the Circuit Judge, hereinabove quoted, and also two letters, one from C.S. Nickols, Director of Public Service, to the City Manager, dated December 8, 1937, one from the City Manager to the Director of Public Service, dated February 8, 1939, and two plats or maps of the property in question, dated March, 1942, apparently showing possible uses of the property.
These letters are nothing more than inter-departmental communications between heads of two departments of the city. The maps are of no significance except to show the location of the property, some details in connection therewith and possible uses. These letters and maps are not binding upon anyone and at most constituted information.
It is alleged that the existence of the letter from the Secretary of War, the two letters from Department heads and the maps or plats were not known to the appellant at the time of the eminent domain proceedings and were concealed from them and in effect had the appellant been informed about them, it could have sustained its allegations of bad faith in determining necessity and in showing fraud.
The letters and maps or plats do not show fraud and are not even badges of fraud, or bad faith.
No doubt a great majority of the counties and municipalities of the State during the last few years have appealed to the Federal Government for financial aid and assistance for the construction of every conceivable project of a public nature. The fact that Federal aid is not granted does not show bad faith or fraud in determining necessity for the public improvement.
In the case at bar the resolution determining the necessity for the property contained the following:
"It is necessary that the City of Miami acquire the property * * * for municipal landing fields, airport, public landings, docks, wharves and warehouse purposes."
In an attempt to get Federal aid the city authorities put their "best foot forward" and urged upon the Secretary of War that the property, when acquired and developed, would be a great aid to "National Defense". The determination of the Secretary of War that the property would not be of any aid to "National Defense" in no way negatived the resolution of the City Commission that the property was necessary for the municipal purposes stated in the resolution. It would probably stagnate all public works and improvements to say that a determination that such public improvements on particular land would be void because of fraud in the event Federal aid was applied for and refused.
It is strongly urged by the appellant that fraud existed at the time of the adoption of the resolution because the development could not take place in the immediate future and the lapse of time, about seven years, had shown and demonstrated that the city officials did not intend to proceed with the project. This contention is without merit. It is not necessary that a political subdivision of the state have money on hand, plans and specifications prepared and all other preparations necessary for immediate construction before it can determine the necessity for taking private property for a public purpose.
During the last ten years the progress, growth and development of the Miami area has been beyond the expectations of most everyone. It is the duty of public officials to look to the future and plan for the future. In erecting public buildings and public improvements, it is likewise the duty of public officials to build and plan not only for the present but for the foreseeable future. A few years ago it was difficult for anyone *903 to determine exactly what would be necessary as an airport terminal for Miami for today. City officials would have been derelict in the performance of their duties and they planned only for the necessities of ten years ago without any consideration for the necessities of the future. Even though the International Airport in Miami may be sufficient to take care of the needs of today, wise planning in the public interest requires some consideration for the future. The time may not be far distant when other airports or landing fields will be necessary. The hands of public officials should not be tied to the immediate necessities of the present but they should be permitted, within reasonable limitations, to contemplate and plan for the future.
Each of the assignments of error, the record and the briefs in this case have been carefully considered and we find no reversible error.
Affirmed.
HOBSON, C.J., and THOMAS, SEBRING, and DREW, JJ., concur.
TERRELL and ROBERTS, JJ., not participating.