358 So.2d 1151 (1978)
CITY OF MIAMI, Florida, a Florida Municipal Corporation, Appellant,
v.
COCONUT GROVE MARINE PROPERTIES, INC., Coconut Grove Marine, Inc., Grove Yacht Sales and Brokerage Inc., All Florida Corporations, Grove Design and Purchasing Co., and Billy Paul Kelley, Appellees.
No. 77-480.
District Court of Appeal of Florida, Third District.
May 16, 1978.
Rehearing Denied June 16, 1978.
*1152 George F. Knox, Jr., City Atty., and Michel E. Anderson, Asst. City Atty., for appellant.
Frates, Floyd, Pearson, Stewart, Richman & Greer and Phillip E. Walker, Miami, for appellees.
Before NATHAN, HUBBART and KEHOE, JJ.
NATHAN, Judge.
The City of Miami, defendant in the trial court, takes this appeal from a judgment in an action for damages stemming from alleged misuse of the City's condemnation power. Plaintiffs, former owners, corporations and businesses, filed this action for damages against the City for wrongful taking of private property for a private use. The complaint alleged that the City, having taken plaintiffs' property ostensibly for a public purpose, bestowed the property and plaintiffs' business upon another private business. The damages sought by the plaintiffs include (1) the difference between the amount plaintiffs received in a prior condemnation action, and the amount the City would have had to pay if the zoning had been changed to high rise pursuant to the plaintiff-owner's application; (2) damages for loss of business, profits, clientele, good will and future business; and (3) punitive damages for misuse of public funds for private purpose.
Prior to January 30, 1974, plaintiff Coconut Grove Marine Properties, Inc., was the owner of the property located at 2550 South Bayshore Drive, Miami, Florida, which is the subject of this litigation. In 1971, plaintiff applied to the City of Miami Planning and Zoning Board for a zoning change and variances to allow the construction of a high rise complex including a marina, boat slips and apartments. The applications were denied and plaintiff appealed to the Miami City Commission. Plaintiffs now allege that the City Commission indefinitely deferred ruling on the applications in order to acquire the property at a lower price than the City would have had to pay had it not wrongfully prevented rezoning.[1] Plaintiffs further allege a breach of the public trust so as to allow punitive damages.
The record reflects that in 1972, the City held a special bond election called the *1153 "Parks for People" bond issue, pursuant to which the issuance of bonds was approved by the electorate for "acquiring, constructing, developing, extending, enlarging, filling and improving public park and recreational facilities in the City... ."
In 1973, the Miami City Commission approved a resolution declaring the property owned and leased by the plaintiffs to be "necessary and for a public purpose to provide for park and recreational facilities," and ordered that the property owned by plaintiff Coconut Grove Marine Properties, Inc., and on which plaintiffs operated their businesses, be acquired "for additional park facilities for the expansion of Dinner Key Marina by gift, purchase or condemnation."
The condemnation proceedings instituted as a result of an ordinance declaring plaintiff's property to be necessary "for a public purpose to provide park and recreational facilities," resulted in the entry of a settlement agreement pursuant to which Coconut Grove Marine Properties, Inc., and the City of Miami waived trial by jury and consented to the entry of a final judgment vesting title to the property in the City. The final judgment provided that the City would pay $950,000.00 as full and just compensation for the property taken and "for all other damages of any nature whatsoever which has or may result from the condemnation action to Coconut Grove Marine Properties, Inc." The final judgment further provided that Underwood Marine Corporation, lessee of the property and a defendant in condemnation, "shall be permitted to remain in possession" of the leased portion of the property for one year, and thereafter on a month to month basis. Since entry of the final judgment in condemnation in 1974, the City of Miami has continuously leased the property to private businesses for nautically related purposes; namely to a private marine sales outlet and marina, and to a store selling clothing and marine related items. This, plaintiffs contend, deprived them of the clientele and good will which they established having previously conducted similar business on that property.
Subsequent to the final judgment in condemnation, the City Commission advertised for bids for redevelopment of the property. One of the proposals submitted is a highly comprehensive shopping mall similar to Ghiradelli Square in San Francisco, Ports of Call in Los Angeles and Trolley Square in Salt Lake City. This is the basis for the plaintiffs' claim in the instant case, that the property was wrongfully taken for a non-public purpose.
After hearing the evidence, the trial judge found that when the Miami City Commission only announced its intention to use the "Parks for People" bond proceeds for public parks and beaches, the people voting in the special bond election were never informed that the City would invite proposals for private commercial utilization such as a shopping mall, which would exclude free and uninhibited access to or by the public. The court concluded that eminent domain proceedings are a lawful and constitutional exercise of governmental authority for the acquisition of private property; but that the invitation for bids contemplated a use that is predominantly private and commercial, and therefore, the condemnation was not "necessary and for a public purpose to provide for park and recreational facilities." Thus, the court ruled, a city may take private property for private use, but under the facts presented in this case, plaintiffs have a cause of action for damages for the taking. The court stated that it "recognize[d] the City's ability to initiate curative legislation," but also pointed out that the shopping area concept is a significant departure from the Master Plan which provides for a serene panoramic park atmosphere. The trial court then entered the judgment herein appealed, ruling that the City shall have the opportunity to modify the proposal and readvertise for bids; that plaintiffs' petition for injunction be denied without prejudice; and that plaintiffs' prayer for compensatory damages be denied without prejudice.
At the outset, we note that the trial judge improperly treated this action as a suit for declaratory decree. Secondly, we are of the opinion that the judgment does *1154 not constitute a final judgment, and therefore, is not appealable by way of plenary appeal. We shall, however, consider this cause to be a petition for writ of certiorari, and treat it accordingly.
The City of Miami contends that under the facts of this case, where the property was totally taken by condemnation, and where the former owner entered into a settlement agreement in the prior condemnation action, in which it agreed to accept a specified sum as full compensation for the property taken and for all other damages of any nature which have resulted or may result from the condemnation, the former owner cannot file a new lawsuit seeking business damages for businesses which were located on the condemned property.
Generally, business damages do not constitute a part of the constitutionally protected concept of "just" or "full" compensation unless such damages come within the scope of the applicable statutory law. State Road Department v. Bramlett, 189 So.2d 481 (Fla. 1966). See Section 73.071(3), Florida Statutes (1975), which provides in pertinent part that compensation for business damages may be awarded "[w]here less than the entire property is sought to be appropriated." (emphasis supplied). The right to business damages is a matter of legislative grace and not constitutional imperative. Jamesson v. Downtown Development Authority of City of Fort Lauderdale, 322 So.2d 510, 511 (Fla. 1975). Failure to meet the statutory requirements will result in disallowance of the claim. State Road Department v. Peter, 165 So.2d 771 (Fla.2d DCA 1964). Plaintiffs in the instant case failed to claim business damages in the initial condemnation action. They did not meet the statutory requirements for such a claim at that time, and they still do not. From the facts in this case, the plaintiffs cannot seek business damages now when they were never entitled to such damages in condemnation.
Plaintiffs contend that they are not challenging the City's right to take private property for public purposes, and they fervently deny that this is an action for business damages. It is, they argue, an action based on a wrongful taking. As stated in Carlor Co. v. City of Miami, 62 So.2d 897, 900 (Fla. 1953), it is elementary that a condemnation judgment or award cannot be collaterally attacked except where there is fraud or where the judgment is void for want of jurisdiction. Moreover, the burden is on the party collaterally attacking a final judgment in eminent domain to demonstrate that the matter was not concluded in the previous action. City of Miami v. Osborne, 55 So.2d 120 (Fla. 1951). In the condemnation proceedings, the plaintiffs (defendants in condemnation) filed an answer admitting necessity and public purpose, entered into a settlement agreement which resulted in a final judgment which provided for the City's right to lease the property for a private purpose (a marina and nautically related businesses), and plaintiffs received the benefits of the final judgment, which all parties and the court agreed was a fair judgment. In that action, then, the matters of the necessity of taking; the amount of compensation; the right of the City to condemn; and the question of whether the taking was for a valid public purpose, were all conclusively determined.
The City next contends that a settlement agreement and final judgment in condemnation may not be attacked so as to allow additional damages without allegation and proof of extrinsic fraud. Extrinsic fraud is defined by Black's Law Dictionary, Revised Fourth Edition, as follows:
"Extrinsic or collateral fraud justifying extrinsic relief against a judgment or decree means some intentional act or conduct by which the prevailing party has prevented the unsuccessful party from having a fair submission of the controversy." (emphasis in original; citation omitted)
It is a universal rule that in cases of attacks on judgments to set them aside because of fraud, it is necessary that the fraud be extrinsic rather than intrinsic, the reasoning of the courts being that if this restriction were not placed on suits of this kind, *1155 litigation would become interminable; thus, the rule is invoked even though injustice may result in individual instances. Fair v. Tampa Electric Company, 158 Fla. 15, 27 So.2d 514, 515 (1946). There are no allegations and no evidence to support a finding of extrinsic fraud in this case. In fact, we find that the record fails to reflect evidence of fraud of any type. Therefore, the plaintiffs' allegations of fraud do not warrant creditable consideration by this court.
The City's third and final contention is that a governmental authority may constitutionally acquire land by the eminent domain power and then lease the land for commercial use in furtherance of the public purpose. We agree. See, for example, Panama City v. State, 93 So.2d 608 (Fla. 1957), wherein the Florida Supreme Court held that concession buildings containing shops and stores were incidental to a marina and did not destroy the public nature of the project. As stated in Baycol v. Downtown Development Authority of Fort Lauderdale, 315 So.2d 451, 455 (Fla. 1975),
"We have long been committed in a consistent series of cases to the proposition that eminent domain cannot be employed to take private property for a predominantly private use; it is, rather, the means provided by the constitution for an assertion of the public interest and is predicated upon the proposition that the private property sought is for a necessary public use. It is this public nature of the need and necessity involved that constitutes the justification for the taking of private property, and without which proper purpose the private property of our citizens cannot be confiscated, for the private ownership and possession of property was one of the great rights preserved in our constitution and for which our forefathers fought and died; it must be jealously preserved within the reasonable limits prescribed by law.
Applying reason to this basic proposition, our decisions have, however, consistently allowed an incidental private use where the purpose of the taking was clearly and predominantly a public purpose." (emphasis in original).
In the case of State ex rel. Ervin v. Cotney, 104 So.2d 346, 348 (Fla. 1958), it was held that a public body cannot use its power and funds to acquire property, either by purchase or by exercise of the eminent domain power, for the sole purpose of making the property available to private enterprise for private uses; but if a valid public purpose will be effectuated by a proposed plan of acquisition and/or improvement of the property by a public body, the fact that a sale or lease of a portion of the improvement to private parties was contemplated will not invalidate the plan. The fact that a private corporation or individual will incidentally profit from the transaction does not, in itself, defeat a public purpose. Hanna v. Sunrise Recreation, 94 So.2d 597, 601 (Fla. 1957).
For the foregoing reasons, we have determined that the trial court departed from the essential requirements of law. Therefore, we reverse the judgment and deny the plaintiffs' prayer for relief with prejudice.
It is so ordered.
NOTES
[1] It appears from the record before us that plaintiffs never took action to compel the City Commission to act on the applications for rezoning and variances; and further, that the matter was not raised in the initial condemnation suit.