ORFINGER, Chief Judge.
The issue on appeal is whether the trial court erred in “rescinding” a final judgment in eminent domain entered several years earlier, on a finding that there was “constructive fraud” in the proceedings. We find error and reverse.
In 1964, the appellant Canal Authority filed a petition for condemnation of 630.85 acres of land owned by appellee Harbond, Inc., pursuant to chapter 374, Florida Statutes, which gave the canal authority power *1347 to acquire land to be used in connection with the Cross Florida Barge Canal. The Authority took title to the land by Order of Taking dated September 23, 1964, and paid Harbond $121,476.50. The title was confirmed by Final Judgment dated April 14, 1965. Harbond took no appeal from this-final judgment.
Subsequently, a portion of the Cross Florida Barge Canal was constructed through the property. In the original plans, some of these lands which lie to the north of the partially completed canal were designated “maintenance spoil areas (MSA)” and some to the south of the canal were designated as “construction spoil areas (CSA).” In 1969, after receiving title to the land, the Canal Authority granted certain perpetual easements in favor of the United States of America over the MSAs' and CSAs for such purposes as: construction, operation and repair of pipelines; deposit of dredged material in connection with the construction and future maintenance and enlargement of the project; the construction, operation and maintenance of drainage ditches; the right to stockpile earth; etc.
On April 28, 1978, Harbond filed a complaint against the Canal Authority and the United States of America. The suit sought to rescind the acquisition of four parcels of land contained within the 630 acres by the earlier condemnation proceeding, constituting lands to the north and south of the canal designated by the Authority as maintenance spoil areas and construction spoil areas. As a basis for requesting rescission, the complaint alleged that construction had ceased on the canal and the condemned property would not be used for the purpose for which it was originally taken because of abandonment of the project. Harbond asked for the return of title' to the land and offered the original purchase price of $121,-000, plus 6% interest since the date of payment to the Authority. The United States of America, as a defendant, removed the case to the Federal District Court, whereupon Harbond dismissed the case as to the United States and the case was remanded back to the state court.
After extensive discovery, both parties moved for summary judgment. At the hearing, the Canal Authority agreed that all material facts were not in dispute and that the entry of summary judgment for one party or the other would be proper. The Canal Authority asserted that neither the complaint nor the depositions revealed any ultimate facts under which Harbond would be entitled to the remedy of rescission. Near the conclusion of the hearing, the court found that in its opinion there were not sufficient allegations in the complaint to assert a cause of action in constructive fraud, but with the agreement of the Canal Authority, the trial court allowed Harbond to submit an amended complaint. Harbond subsequently filed an amendment to the complaint adding a Count II to the original complaint, claiming constructive fraud. The allegations which Harbond contended constituted constructive fraud were:
(4) At the time of the taking, the properties which are the subject matter of this suit were taken under the false assertion that they were needed for the construction of the canal.
(5) The assertions made by the defendant (Canal Authority) misled the plaintiff (Harbond) in this cause into believing that all lands condemned were, in fact, necessary for the construction of the canal when, in fact, the defendant either knew or should have known through the exercise of due care and soil testing prior to condemnation, that the lands which are the subject of this suit were not necessary for the construction and could not be used for the purposes which the defendant now alleges those lands were taken.
(6) The effect of the actions of defendant was to deceive plaintiff into believing that, in fact, all of the lands taken by condemnation by the defendants were necessary for construction of the canal.
(7) It is now apparent that the lands taken could not have been utilized for the purpose for which they were taken, and is further apparent that this was a mistake on the part of defendant that misled the plaintiff, and was a mistake which could have been avoided through the exercise of due care and expertise available to the defendant at the point of condemnation.
*1348 The prayer for relief was: “Wherefore, plaintiff requests that the lands in question be returned to them based on a finding of constructive fraud.” The trial court granted Harbond’s motion for summary judgment, holding that “the evidence contained in the court file supports plaintiff’s claim of constructive fraud and therefore rescission is a proper remedy.” After Canal Authority’s motion for rehearing was denied, this appeal followed.
It is a well settled principle of law that a final judgment in an eminent domain proceeding can only be collaterally attacked because of fraud or where it was void as for want of jurisdiction. Carlor v. City of Miami, 62 So.2d 897 (Fla.1953). The supreme court stated the rule applicable here thusly:
It is well established that the rules governing the application of the doctrine of res judicata are applicable to condemnation judgments and that the parties are concluded as to all matters which were put in issue or might have been put in issue or were necessarily implied in the decision of the trial court such as the right to condemn and the legality of the proceedings. It is immaterial that the point adjudicated may have been erroneously decided. If it was, the owner should have corrected the error by appeal and cannot now do so by a collateral attack upon the final judgment ... (citations omitted). It is likewise established law that there is no reversion where the fee simple is taken and there is either a failure to use or a discontinuance of the use which impelled the taking ...” (citations omitted) 62 So.2d at 900.
In the original condemnation proceeding, the Authority alleged in its petition for condemnation that it was in the public interest and “necessary, for the purpose of constructing the Cross Florida Canal ... to acquire” Harbond’s lands. Thus the necessity for the taking was put in issue, as is required by section 73.021(1), Florida Statutes (1981), and this issue was concluded by the final judgment in the condemnation proceeding. The final summary judgment in Harbond’s favor cannot therefore be sustained on the question of necessity or abandonment of use.
This same reasoning precludes the successful maintenance of Harbond’s suit on its claim of fraud. The allegations of fraud which have previously been cited all go to the question of the necessity for the taking, an issue which was or could have been litigated in the condemnation action,[1] and thus was conclusively determined by the final judgment. If these allegations are sufficient to charge fraud, a point we need not decide, they allege at most intrinsic fraud. The universal rule regarding collateral attacks on judgments based on fraud is that extrinsic rather than intrinsic fraud is required as a basis for such attack, Fair v. Tampa Electric Company, 158 Fla. 15, 27 So.2d 514 (1946). Referring to United States v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93 (1878), the Fair court gave the following examples of extrinsic fraud:[2] prevention of an unsuccessful party from presenting his case, by fraud or deception practiced by his adversary; keeping the opponent away from court; falsely promising a compromise; ignorance of the adversary about the existence of the suit or the acts of the plaintiff; fraudulent representation of a party without his consent and connivance in his defeat, and so on. 27 So.2d at 515.
This court has previously discussed the reasons for not permitting a collateral attack on a final judgment on the basis of intrinsic fraud[3] in Truitt v. Truitt, 383 So.2d 276 (Fla. 5th DCA 1980), as follows:
*1349 The reason for the rule precluding collateral attacks based on intrinsic fraud is that if a judgment is obtained on false testimony or on a false instrument, the parties are heard, the evidence is submitted to and receives the consideration of the court, and the matter has been actually tried or could have been tried, and the parties are estopped to set up the intrinsic or direct fraud and cannot contradict the judgment.
Id. at 278.
As in Truitt, the issues raised by Harbond here were issues properly raised in the original suit and may not now be the basis for a collateral attack on the judgment. See also, City of Miami v. Coconut Grove Marine Properties, Inc., 358 So.2d 1151 (Fla. 3d DCA 1978).
Appellee’s reliance on Canal Authority v. Ocala Mfg. Co., 365 So.2d 1060 (Fla. 1st DCA 1979), dismissed, 368 So.2d 1363 (Fla. 1979), is misplaced for two reasons. First, it is clear from the opinion there that the “serious questions ... presented ... by the Canal Authority” were not raised or litigated in the trial court and thus were not preserved for appeal. Secondly, that case involved the rescission of a contract, and did not involve a collateral attack on a final judgment, so different rules of law applied there. Neither is Seadade Industries, Inc. v. Florida Power & Light Company, 245 So.2d 209 (Fla.1971), relied on in part by the trial court, apposite to the issues here. That case involved a direct appeal from a condemnation order wherein the supreme court held that a condemning authority requiring approval of independent government agencies to proceed with the project, could proceed upon a demonstration of a reasonable probability of securing approval, and was not required to wait until the approvals were in hand. Justice Ervin’s special concurring opinion to the effect that any title secured by the condemning authority was a defeasible title if the project did not ultimately secure approval, was not the opinion of the court.
The trial court thus erred in granting appellee’s motion for summary judgment and should have entered judgment for appellant. The final summary judgment is reversed, and the cause is remanded with directions to enter judgment for appellant.
REVERSED and REMANDED.
DAUKSCH and COWART, JJ„ concur.

. The record does not include Harbond’s answer to the original condemnation petition, but it does include the petition. As previously noted, the petition alleged the necessity for the taking, and the answer would either admit or deny that allegation. In either case, the issue was before the court for determination.

. Extrinsic fraud is defined as fraud which is collateral to the issues tried in the case where the judgment is rendered. Blacks Law Dictionary, Fifth Ed. (1979).

.Intrinsic fraud is defined as that which pertains to an issue involved in the original action or where acts constituting the fraud were, or could have been litigated therein. Black’s Law Dictionary, Fifth Ed. (1979).