SHARP, Judge.
The Canal Authority of the State of Florida appeals from eleven consolidated final judgments ordering it to convey lands back to appellees, the former landowners, and ordering the former owners of the parcels to return the purchase prices paid through various condemnation proceedings completed many years ago. We reverse.
The Canal Authority, a corporate entity created by state law [1] was formed in 1933. Construction of the canal project began in 1935, but stopped on June 20, 1936, when the initial congressional appropriation of federal funds was depleted. In 1942, the United States Congress continued the canal project by passing a law requiring local interests to provide the following assurances:
To furnish lands and rights-of-way required for the Canal; to take over and maintain and operate all highway bridges and roadways after completion, and to protect the United States from damages incident to the construction of the Canal.
In 1960 the Canal Authority extended the required assurances, which were formally accepted in November 1963. The federal government then appropriated funds to recommence construction of the canal project. Work began again on the project in February 1964, and proceeded continuously thereafter until stopped by President Nixon’s order on January 19, 1971. Only about 25 miles were actually excavated and none of the parcels in this case, were involved in the construction. Nothing has been constructed since 1971 except for the completion of the State Road 40 bridge, the restoration work in connection with what was to have been the railroad bridge relocation at Dun-nellon, and the construction of a fishing ramp platform for the handicapped at the *1306 spillway of Rodman Dam. Since 1971, no funds have been appropriated by the United States Congress for land acquisition, expansion, or construction of the canal project. In light of the above evidence, we affirm the trial court’s finding that the plans of the Canal Authority to construct the canal project have been abandoned,[2] but we disagree as to the court’s application of this finding to the law in these cases.
The trial court, in essence, granted a re-cission remedy in these cases after it determined that a major part of the consideration for the acquisition of appellees’ lands was the future enhancement of the value of their remaining lands. This had not occurred because the canal was not built, and therefore, there was a failure of consideration. One fee in these cases was acquired by deed executed under threat of condemnation. The other fees were created by orders of taking.[3] Two easements were held by the Canal Authority: one acquired by deed and one by an order of taking.[4]
All of the fees in these cases were held by the Canal Authority in fee simple, without any condition or reservation. Such fee interests created by an order of taking cannot be collaterally attacked on the ground of failure of consideration unless extrinsic fraud is proved.[5] There is no evidence whatsoever in this record to establish extrinsic fraud. This distinguishes this appeal from Canal Authority v. Ocala Manufacturing Company, 365 So.2d 1060 (Fla. 1st DCA 1979),[6] and puts it in line with Carlor Company, Inc. v. City of Miami, 62 So.2d 897 (Fla.1953); Canal Authority v. Harbond, Inc., 433 So.2d 1345 (Fla. 5th DCA 1983); and Langston v. City of Miami Beach, 242 So.2d 481 (Fla. 3d DCA 1971). Similarly, failure of consideration, absent an affirmative showing of fraud, is not sufficient grounds for setting aside a fully executed and recorded deed.[7] Under these circumstances, the Canal Authority may retain its ownership of the lands acquired in fee simple.
We reach a different result regarding the easements, however. The easements, by the very language of their creation, made their existence limited or conditioned upon use by the Canal Authority for the canal project, now abandoned. The document that conveys an easement to the Canal Authority from Hasty-Greene declares: “TO HAVE AND TO HOLD said rights and easement unto the Grantee and its assigns forever, or until such time as said property should no longer be required for the purposes of The Cross Florida Barge Canal project....” (Emphasis supplied). The circuit court order of taking that grants a perpetual easement to the Canal Authority from Ocala Manufacturing states that the easement is “for the purpose of constructing, operating, repairing, or improving the Cross Florida Barge Canal.... ”
Where a condemning authority only has an easement, and its right to use the property has been lost or the public use has ended, the easement is extinguished, and all of its rights revert to the owner of the fee.[8] The owners of the servient tenements in these cases now hold their lands free from the public easements. No quitclaim deeds or payments to the Canal Authority are required.
We reject appellant’s contention that a sum based on current values of the *1307 land be returned to the Canal Authority by Ocala Manufacturing. There is little precedent or authority for such a requirement.[9] The Canal Authority had the right to use the easement over the lands, which is what it paid for. Whether it was able to utilize the easement or not makes no difference. Further, there was no showing that Ocala Manufacturing procured the abandonment, or conducted itself unfairly in extinguishing the easement.
Accordingly, the final judgments are reversed and these proceedings are remanded for entry of final judgments consistent with this opinion.
REVERSED AND REMANDED.
COBB and COWART, JJ., concur.

. Ch. 374, Florida Statutes (1981); Ch. 16176, 1933 Laws of Florida.

. 3 Nichols, Eminent Domain § 9.33 (3d ed.1981); C.J.S. Eminent Domain § 458 (1965).

. The lands acquired in fee simple were those formerly owned by Astor West, Berman, Couse, Gay, Griffitts, Hasty-Greene (by donation), Hodges, Mainer, and Silver Springs Shores.

. The lands acquired by easement were those formerly belonging to Hasty-Greene (by donation) and Ocala Manufacturing.

. See Carlor Co., Inc. v. City of Miami, 62 So.2d 897 (Fla.1953).

. Canal Authority v. Ocala Mfg. Co., 365 So.2d 1060 (Fla. 1st DCA 1979), is further distinguishable from the instant case in that it involved the rescission of a contract.

. 19 Fla.Jur.2d Deeds § 54 (1980); see Collins v. McKelvain, 138 Fla. 463, 189 So. 655 (1939); J.C. Vereen & Sons, Inc. v. City of Miami, 397 So.2d 979 (Fla. 3d DCA 1981).

. 3 Nichols, supra note 2, at § 9.36[1]; 30 C.J.S., supra note 2, at § 460.

. Some older cases were split on the question of whether a condemning authority could recover damages paid after a project was abandoned. See Annot., 121 A.L.R. 12 (1939). However, the better view is that abandonment, after the fee owner’s right to damages have become vested, will not entitle the condemning authority to recover the funds paid to the owners. 30 C.J.S., supra note 2, at § 338.