DOWNEY, Judge.
In March, 1983, appellant, Barbara A. Micale, filed an independent action to set aside a final judgment of dissolution of marriage, which incorporated a property settlement agreement. The appellant contended that she was not aware of the value of the property owned by the parties, that the property settlement agreement was grossly unfair to her, and that her husband had perpetrated a fraud upon the court in the preparation of the agreement and facilitating the dissolution proceeding by furnishing the lawyer for his wife to obtain the divorce. The trial court found there was no extrinsic fraud perpetrated upon the court and entered judgment against the petitioner. This appeal ensued.
It appears that the parties were married in New Jersey, and lived together until 1981. They had three children who were adults at the time of the dissolution. Eventually, they acquired a large number of McDonald and Burger King fast-food franchises. As their business empire grew, they also acquired several aircraft-related businesses, an apartment building, and other companies and investments. The wife was an officer and/or director in many of the business enterprises and, after working for some years in these various endeavors, the wife decided she wanted a divorce and a change in life-style. The husband attempted to keep the marriage together, but to no avail. Accordingly, a New York lawyer who had been associated with their businesses was contacted and he prepared the agreement in question, after which the wife obtained an uncontested divorce with the assistance of a Florida lawyer, who also had been associated with their businesses. Approximately a year and one-half later, the wife became dissatisfied with the agreement and filed this proceeding.
The wife contended that she was unfamiliar with the value of their property and, thus, submitted to the agreement in question; that the agreement was unfair to her; that the husband’s lawyers handled the whole thing, drew up the agreement, told her what to say at the dissolution hearing, and that she was never apprised of the value of what she was giving up. She also claimed her husband told her they must not become involved in contested litigation because it would adversely affect their financial standing with their creditors.
At the end of the trial, the trial judge announced that he adopted the husband’s view of the case and, thereafter, entered judgment denying the wife’s petition.
The posture of this case requires that we review the reasonableness of the discretionary acts of the trial judge based upon the facts taken most favorably to the prevailing party, Walter v. Walter, 464 So.2d 538 (Fla.1985), in order to determine whether the wife’s claims of extrinsic fraud are supported by the record. In DeClaire v. Yohanan, 453 So.2d 375 (Fla.1984), the supreme court, quoting from Fair v. Tampa Electric Co., 158 Fla. 15, 18, 27 So.2d 514 (1946), defined extrinsic fraud as the
prevention of an unsuccessful party [from] presenting his case, by fraud or *417 deception practiced by his adversary; keeping the opponent away from court; falsely promising a compromise; ignorance of the adversary about the existence of the suit or the acts of the plaintiff; fraudulent representation of a party without his consent and connivance in his defeat; and so on.
453 So.2d at 377.
It appears from the record, taken in that light, that although the wife made a bad bargain for herself in entering into this agreement, the evidence does not support her claim of extrinsic fraud. Her pleadings would leave the impression that she was represented by lawyers who were, so to speak, “hired guns” of the husband. However, the evidence does not bear out any such surreptitious arrangement. Furthermore, the wife’s protestations of ignorance regarding the value of their property are likewise convincingly contradicted. In fact, the evidence overwhelmingly presents a scenario supportive of the judgment and validity of the agreement. It appears the wife was very active in the various businesses operated by her and her husband; she was an officer and/or director in many of the various corporations. She attended meetings, discussed strategy, and signed contracts and checks for hundreds of thousands of dollars. The in-house accountant for the businesses testified that it was the wife who “broke him in” initially and furnished him the information about the businesses he needed from time to time. He discussed the businesses in detail with her, including financial statements that reflected the value of the business assets. The lawyer who represented the wife testified that he went over the agreement in detail with her and could tell she had discussed what she was giving up with the accountant and understood it.
Various witnesses testified they discussed the agreement with the wife and several advised her against it — but she was adamant, “she wanted out.” It appears the wife was tired of the corporate rat race and the tension involved in their businesses, which were highly leveraged. She simply wanted to adopt a more simple life. The husband tried to persuade her to keep the marriage together. When it appeared impossible, he asked her what she wanted. She wrote out her demands and he acceded to them. Within a month after the entry of the judgment, the erstwhile wife took a trip to Europe with the man she had been dating.
In Casto v. Casto, 508 So.2d 330 (Fla.1987), the Supreme Court of Florida held that the fact that a party makes a bad bargain is not sufficient ground, by itself, to vacate the agreement. Unfortunately for the wife here, the evidence does not support any claim of fraud or overreaching usually relied upon in cases of this nature. While she may not have known the exact value of all of their property, her intimate involvement with the family businesses and financial affairs precludes her claim of ignorance after the fact of the substantial value of these assets. Neither was she taken advantage of by the lawyers involved. The only evidence is that the husband never told the lawyers what to do. The wife was happy with them and said so at the time.
We therefore hold that there is substantial competent evidence to support the judgment appealed from requiring this court to affirm.
DELL and WARNER, JJ., concur.