603 So.2d 632 (1992)
Sandra LAMB, f/k/a Sandra Leiter, Appellant,
v.
Cary LEITER, Appellee.
No. 91-2127.
District Court of Appeal of Florida, Fourth District.
August 5, 1992.
Rehearing Denied September 24, 1992.
Marina Garcia Wood, of Law Offices of Dennis R. Wood, P.A., Pembroke Pines, and Walter M. Dingwall of Law Offices of Walter M. Dingwall, Fort Lauderdale, for appellant.
James K. Pedley, Fort Lauderdale, for appellee.
FARMER, Judge.
By a final judgment of dissolution, the parties were divorced in June 1986. A separation and property settlement agreement executed a month earlier was incorporated by reference into the final judgment. Husband was required to pay $200 weekly child support for the parties' two minor children, and $100 weekly, permanent, periodic alimony as long as wife remained single. When the youngest child reached eighteen, the alimony was to increase to $200 per week.
Under another provision of the agreement, wife was required to deed her interest in the marital home to husband but had the right to reside there until the youngest child reached eighteen. Then the home would be sold and wife would receive fifty percent of the net proceeds. If, however, wife remarried before the youngest child reached eighteen, she was required to vacate the marital home and would not share in any proceeds from its sale.
In August 1989, the former wife  now remarried  commenced an independent action in the circuit court to vacate the final judgment and set aside the separation and property settlement agreement, alleging that the former husband had forced her to *633 give up any defense of the dissolution action and procured a settlement through coercion, duress and deceit.[1] The case was designated with a new case number and routinely assigned to a circuit judge. The former husband appeared and moved to have the new action assigned to the same judge who had presided over the dissolution of marriage action, arguing that an administrative order of the Seventeenth Circuit required that the judge who had presided over the original action be assigned to the new case. That motion was granted by the dissolution judge, and the case was transferred to his division.
While the case was going through discovery, the former husband objected to a request for production of documents relating to a business in which he had an interest. At a hearing on the objection, the trial judge sustained his objection, after which the following ensued:
WIFE'S COUNSEL: I don't think that there is any basis for it, for the Court's ruling. There is no basis.
THE COURT: Every time you come in here and I make a ruling you argue with me. I will take you up before the bar if you don't shut up. Just get out. I will not tolerate that. You may be the president of some bar association, but are not running this Court now. Get out.
The judge then signed an order sustaining the objection and granting, as agreed between counsel, her pending motion to strike a counterclaim.
She then filed a petition to disqualify the judge. Three days later, the judge entered an order disqualifying himself from the case. Thereupon, the former husband filed a motion "to determine the basis for the Court Order Permitting Recusal of Judge Reasbeck" which the disqualified judge declined to consider for lack of jurisdiction. The former husband then attempted an appeal of the order of recusal and we dismissed the appeal. The former husband now returned to the trial court and filed something that he styled a "Motion for Release from Judgment of Recusal."
A new judge heard that motion and told the parties at the hearing that the recused judge had told him in the parking lot not to proceed with the case until he decided what to do with it. The new judge later entered an order "releasing" the recusal order and transferred the case back to the disqualified judge. The former wife then filed a petition for prohibition with this court. After ordering a response, we denied that petition and some resulting motions to strike.
The record shows that the original petition for dissolution was filed on May 26, 1986; that there was an answer filed by the wife without an attorney on June 6, 1986; and that a final judgment was entered with a "Separation and Property Settlement Agreement" on June 19, 1986.[2] These are the only papers in the file. The final judgment recites that the cause "came on before the court for Final Hearing on Thursday, June 19, 1986" and that the only witnesses to testify were the husband and his "corroborating [residency-?] witness". It further recites that the parties had entered into the property settlement agreement on May 14, 1986, and that they "have settled there [sic] respective property rights and have agreed on all matters in regard to property owned by them."
After the disqualified judge took the case back, it was set for a trial on the merits of the former wife's claims. At the beginning of the trial, the former husband moved for a dismissal of the action on the grounds that the former wife had not followed rule 1.540(b) by filing a motion for relief from the judgment within one year of the date of the final judgment. A number of witnesses testified on the merits of the coercionduress claims. At one point, a business and social friend of both parties testified that the former husband had told him in a conversation contemporaneous with the divorce *634 that he "had the judge in his back pocket."
The former wife testified that she suffers from multiple sclerosis and requires medication to prevent seizures. She stated that the former husband had told her that he wanted a divorce and that if she fought him and defended herself against his claim in the dissolution of marriage action he would prove that she is an unfit mother by reason of her affliction, who is unable to take care of the children. She said that he told her that, if she did not agree as he demanded, he would fight her in court and cause her to lose custody of their two minor children. She added that he forced her to accept the terms and provisions of the property settlement agreement, which he had prepared by his attorney.
After hearing all of the evidence, the judge announced that the former wife's petition did not comply with rule 1.540(b) because it was brought more than one year after the judgment. Characterizing her claims as intrinsic fraud, the court instructed the lawyers to prepare a final judgment on the proceeding and invited the former wife to "go up to the Fourth District and get a ruling." He further added that if the case came back to him he would recuse himself in light of the testimony that the former husband had him in his "back pocket," saying "I just wouldn't feel proper making a decision." An appropriate judgment was then entered. The former wife timely appealed.
Rule 1.540, Florida Rules of Civil Procedure, provides that a motion to set aside a judgment based on fraud must be made within one year from the date of the judgment. The rule also states, however, that:
This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, decree, order or proceeding or to set aside a judgment or decree for fraud upon the court.
The former wife brought an independent action; she did not seek relief under rule 1.540. Hence, unless the one-year provision of the rule applies to such actions, her action was not subject to dismissal on timeliness grounds.
We pause to note one stylistic idiosyncracy of the former wife's initial pleading, which she designated with the term "petition". instead of "complaint". There was a time in Florida when petitions were similar to motions and filled largely the same function. As Mr. Trawick has observed: "Older cases distinguish between motions and petitions as applications for an order, but the Rules of Civil Procedure have eliminated petitions for that purpose." Trawick, FLA.PRAC. & PROC., § 9-1. Rule 1.100(a) provides that the initial pleading shall be designated a complaint or, when so provided by a specific statute or rule, a petition. At the same time, rule 1.100(b) provides that any application to the court for an order is done by motion. In spite of the rule, many applications for an order are denominated as "petitions". Old habits die hard.[3]
There is no statute or rule which provides that the initial pleading in an independent action for relief from a judgment, on the grounds of fraud, be called a petition. Hence, the proper name for the pleading should have been "complaint". The judge may have been misled by the wrong term to view the document as, in effect, an application for an order under rule 1.540(b). When the complete text of the document and all succeeding papers are reviewed and considered, however, it is indisputable that this was an independent action to set aside the final judgment.
The former husband argues that the one-year time limitation of rule 1.540(b) bars the former wife's action. But that argument has been entirely undone by the supreme court's decision in DeClaire v. Yohanan, 453 So.2d 375 (Fla. 1984), where the court recognized that the rule does not limit the power of a court to entertain an independent action to set aside a judgment or decree for fraud on the court. 453 So.2d at 378. To quote from the court's own words:

*635 For better understanding, the circumstances under which a judgment may be challenged are set forth as follows:
Within One Year under Rule 1.540(b)
* * * * * *
3) Any type of fraud, misrepresentation, or other misconduct of an adverse party including intrinsic fraud which occurs during the proceeding such as false testimony.
No Time Limitation under Rule 1.540(b) or Independent Action
* * * * * *
4) Extrinsic fraud which prevents a party from having an opportunity to present his case in court. [e.o.]
453 So.2d at 378-79. It thus seems perfectly clear to us that a challenge based upon fraud on the court and brought as an independent action may be brought more than one-year after the judgment was entered. Hence the inquiry becomes whether, as a matter of law, fraud on the court has been alleged.
As the court explained in DeClaire, one kind of fraud on the court is called "extrinsic fraud". Further explaining, the court said:
Determining the conduct that constitutes intrinsic fraud, which requires action under the rule within one year of the entry of the final judgment, and the conduct that constitutes extrinsic fraud, for which an action may be brought at any time, is the critical issue in the instant case. The cases distinguish between false and misleading information being presented on an issue to be tried [intrinsic fraud] and conduct which prevents a party from trying the issue [extrinsic fraud].
453 So.2d at 380.
Unlike the former wife in DeClaire, who alleged that the former husband had submitted a false financial affidavit in the divorce proceedings, here the former wife alleged that the former husband had used coercion and duress to keep her from litigating child custody, alimony and property division issues. Indeed, the record from that proceeding shows that she appeared without counsel in her "answer," admitting all of his allegations, and prayed simply that the marriage be dissolved. Without attempting to state for all time what circumstances might amount to a fraud on the court, we can confidently say that what was alleged here fills the bill.
We therefore reverse the judgment and remand for further proceedings. We expressly omit any determination as to whether she proved her case at the trial. Upon remand, the case shall be assigned to a new judge[4] who shall hold a new trial, after allowing such discovery as the parties may reasonably require on the issues to be tried.
REVERSED AND REMANDED WITH DIRECTIONS.
GLICKSTEIN, C.J., and OWEN, WILLIAM C., Jr., Senior Judge, concur.
NOTES
[1] Her initial pleading was designated as a "petition". See fn. below.
[2] We note that the final judgment was entered barely three days after the period of limitation set forth in section 61.19, Florida Statutes (1985).
[3] In spite of the language of rule 9.330(a), Florida Rules of Appellate Procedure, many motions for rehearing filed in this court are labelled "petitions".
[4] One of the issues raised by the former wife is the revocation of the disqualification order by the original judge. The former husband argues that our denial of her petition for prohibition is the law of the case on that issue. Prohibition is a discretionary writ, and it is thus unlikely that it can have the effect of the law of the case. In any event, we conclude that the trial judge has himself made this issue moot by his own recusal after the trial. The only question left is the effect of the trial on the new judge. We have decided that justice requires that the new judge begin on a clean slate to consider this independent action for relief from the final judgment of dissolution of marriage.