625 So.2d 59 (1993)
Robert A. GORDON, Appellant,
v.
Barbara Ann GORDON, Appellee.
No. 92-0582.
District Court of Appeal of Florida, Fourth District.
September 22, 1993.
*60 James K. Pedley, Fort Lauderdale, for appellant.
Michele K. Feinzig, of Tripp, Scott, Conklin & Smith, Fort Lauderdale, for appellee.
FARMER, Judge.
More than one year after the entry of judgment, a former husband [he, him] filed a petition for relief from a final judgment dissolving his marriage to his former wife [she, her] and for rescission of a postnuptial property settlement agreement that had been incorporated into the judgment.[1] He alleged that she had extorted his consent to the agreement by threatening to disclose to the Internal Revenue Service that he had falsified his tax returns to evade federal income taxes.[2] His petition stated unequivocally that, except for her threats and extortion, he simply never would have signed the agreement. Her threats, he alleged, constituted fraud and extortion which entitled him to relief from the judgment and underlying agreement under rule 1.540(b).[3]
His petition in substance alleges the following facts to demonstrate extortion, which he claims prevented him from materially participating in the dissolution proceedings:[4]
1. She was, he alleges, a prostitute before the marriage, which was actually arranged for the convenience of both parties and thus was not out of love. There were no children of the marriage.
2. She knew that he had not filed any tax returns in 15 years and had previously used this information to extort money and gifts for herself and friends.
3. During the marriage, another couple lived with them and, using the knowledge of his tax situation, she forced him to purchase homes and vehicles for this couple.
4. She used the tax information to force him to pay her an "allowance" which reached $2,000 per week.
5. Unable to cope with her demands, in early 1988 he sought legal advice to terminate the marriage.
6. During discovery, her attorney repeatedly stated that if settlement was not reached, then a deposition would be needed and tax returns would have to be produced. Her attorney was fully aware that he had not filed tax returns and used the information to coerce him into signing the agreement at issue.
7. The settlement agreement treated her with extraordinary generosity. Some of the more striking benefits given to her under its terms were: (a) 4 automobiles; (b) the marital home; (c) $2 million in alimony to be paid even if she remarries *61 or dies; and (d) a $1.5 million insurance policy.
These facts, he claimed, amount to extrinsic fraud as the supreme court had defined the term in DeClaire v. Yohanan, 453 So.2d 375 (Fla. 1984).
She responded with a motion to dismiss his petition, arguing that the conduct alleged is really only intrinsic fraud and that his attempt at relief came too late.[5] She notes that his petition was filed some 20 months after the final judgment incorporating the settlement agreement.[6] She contended that, even assuming that what she did amounted to extortion of the property settlement agreement from him, extortion itself does not constitute extrinsic fraud. Her lawyer argued:
"Intrinsic fraud applies to fraudulent conduct that arises within a proceeding and pertains to issues in the case that have been tried or could have been tried. Now, the Wife may have exercised, in quotes, as an example, extortion on the Husband. The Wife may have caused him to have duress. He may have acted under duress or he may have been coerced into entering into the Agreement, but those actions did not prevent the Husband from still raising the issues that he wanted to defend in his dissolution of marriage action back then, nor does it prevent him from doing it today. That's what he wants to do, is set aside the Agreement, then come back again and relitigate his divorce. He had every opportunity back then to do it. So, there was no fraud on the Court. Extrinsic fraud on the Court goes to the jurisdiction and the power of the Court to act."
The trial court dismissed his petition with prejudice. He appeals. We reverse.
The issue is whether his petition alleges a proper basis for relief from a judgment under rule 1.540(b) outside of the one-year time limitation. In DeClaire v. Yohanan, 453 So.2d 375 (Fla. 1984), the supreme court explained the concept of extrinsic fraud that is not barred by the one-year provision of rule 1.540(b). It quoted the following:
"Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side  these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a fair hearing. [citing United States v. Throckmorton, 98 U.S. 61, 65-66, 25 L.Ed. 93 (1878).]
* * * * * *
In other words, extrinsic fraud occurs where a defendant has somehow been prevented from participating in a cause."
DeClaire, 453 So.2d at 377. The court also referred to one of its earlier decisions, Fair v. Tampa Electric Co., 158 Fla. 15, 18, 27 So.2d 514, 515 (1946), where it defined extrinsic fraud as the:
"prevention of an unsuccessful party [from] presenting his case, by fraud or deception practiced by his adversary; keeping the opponent away from court; falsely promising a compromise; ignorance of the adversary about the existence of the suit or the acts of the plaintiff; fraudulent representation of a party without his consent and connivance in his defeat; and so on."
*62 If one could distill the common element from all of these examples, it appears to be intentional and voluntary conduct by one party to litigation that causes the adverse party involuntarily to acquiesce in or accept without protest a final result in the action. This result is achieved in such a way that the adverse party does not present that party's claim or defense to a court for a resolution. The means used to achieve that acquiescence or acceptance are not as important as is the purpose for which the means are employed  i.e. the deliberate interruption of the free participation by the adverse party in the decision-making process.
We have recently considered a similar, though not identical, claim for relief from a judgment and property settlement agreement in which coercion and duress, rather than extortion, were alleged and the issue turned on whether the allegations constituted extrinsic fraud. In Lamb v. Leiter, 603 So.2d 632 (Fla. 4th DCA 1992), the former wife brought an independent action for relief from the judgment and alleged that her husband "had forced her to give up any defense of the dissolution action and had procured a settlement through coercion, duress and deceit." 603 So.2d at 632-33. As here, the attempt came more than one year after the judgment had been entered. The trial judge dismissed the petition on that basis. We held that the allegations were sufficient to state an independent action for extrinsic fraud and reversed.
All claims of extrinsic fraud depend on their own facts, but it is useful to compare the facts here with those in Lamb. There the petitioner suffered from multiple sclerosis and required medication to prevent seizures. The petitioner claimed that the former husband had told her that he wanted the divorce but that if she fought him and defended herself he would prove that she was an unfit mother, who by reason of her affliction could not care for her children. He threatened to fight her in court if she did not agree with him and would thus cause her to lose custody of them. His threats forced her to accept the terms of the property settlement agreement which had been prepared by his attorney.[7]
While we explained that our decision in Lamb was not intended "to state for all time what circumstances might amount to a fraud on the court," we were completely confident that the scenario alleged in that case "fills the bill". 603 So.2d at 635. Unless there is some difference for purposes of extrinsic fraud between coercion and duress on the one hand and extortion on the other, we are unable to distinguish this case from Lamb. Extortion is, after all, only an extreme form of coercion and duress.[8]
In this case, the former husband has alleged a claim of extortion nearly identical to that in Berger v. Berger, 466 So.2d 1149 (Fla. 4th DCA 1985).[9] In Berger, the former wife claimed that she signed a marital settlement agreement only because he threatened to report her to the IRS if she did not sign. She owned and operated a beauty salon and she apparently had failed to report substantial cash receipts on the parties' joint income tax returns. Admittedly he was a part owner of the same business, even if he did not actually work in it, and he actually prepared the concededly false returns. He argued, however, that he threatened her with disclosure only so that she could not claim alimony on the basis of the unreported income from her business. We held:
"We have a certain amount of sympathy for [his] position, but the fact remains he committed the crime of extortion under Section 836.05, Florida Statutes (1983), which specifically deems it a second degree felony to threaten to expose another for *63 the commission of any crime or offense for one's own pecuniary advantage. There can be no doubt that this statute covers the situation before us." [e.s.]
466 So.2d at 1150-1151.[10]
Although we did not make clear the procedural posture of the proceeding in Berger, we are frankly unable to distinguish the allegations in this case from those in Berger.
As a matter of policy, there are good reasons to allow this kind of collateral attack  upon a proper showing  in dissolution of marriage proceedings. The inflamed emotions attending the end of a marriage often present an irresistibly tempting occasion for a dominating party to use coercion and duress, or extortion, to force a weaker party to capitulate without a real hearing in court.
While an ingredient in many of the examples used by the court in DeClaire may well have been lying or trickery, both entirely embraced by the concept of fraud, the essence of extrinsic fraud is the deliberate use of some device to stop an adverse party's voluntary participation in the litigation process. Extortion can prevent one from fully litigating one's case just as effectively as deceiving the party about the pendency of the suit. It does not much matter whether that prevention is accomplished by lying and cheating or instead by force or extortion. In each, the end is the same. The fact that all are embraced under one term of art  "extrinsic fraud"  is but a convenience of reference, not a boundary on the universe of devices which may be so employed.
We disagree with the trial court's determination that the former husband here did not allege the kind of facts that, if proven, would amount to extrinsic fraud. There seems to be a perception about DeClaire, carried forth in her argument in support of her motion to dismiss the petition, that there are two kinds of extrinsic fraud recognized in Florida: one kind constituting a fraud on the court, the other kind not constituting fraud on the court. Within the one-year period following entry of the judgment sought to be set aside, it does not much matter what kind of fraud  intrinsic or any kind of extrinsic  is involved, for the court can use either kind to relieve a party of a judgment. It is only when the one-year period has run that it makes any sense at all to worry whether the fraud is extrinsic and, if so, whether the proper kind of extrinsic fraud is involved.
We hereby take the opportunity to make clear that DeClaire allows but one kind of fraud to be the subject of an independent action brought more than one year after the judgment. The court in DeClaire obviously referred to that kind of fraud as extrinsic. At the same time, it made clear that this extrinsic fraud is synonymous with a "fraud on the court." In short, although not all frauds may be deemed extrinsic, all extrinsic frauds authorizing relief outside the one-year period will be a fraud on the court.
She also argues that his petition in the dissolution of marriage action is not the kind of "independent action" permitted by DeClaire where more than one year has elapsed since the entry of the judgment.[11] There is language in the supreme court's opinion that admittedly might lead one to believe that a motion under the rule, rather than an independent action, alleging extrinsic fraud on the court might properly be filed more than one year after the entry of judgment. *64 We do not think that is what the court meant in DeClaire, however. Properly understood, we think the court has construed the rule to require that all frauds on the court older than one year must be brought as an independent action, and not by motion in the original action.
We thus do not believe that his attempt to obtain relief from the final judgment of dissolution was absolutely barred by the one year time limitation of rule 1.540(b). He should be given leave upon remand to amend his independent action to adopt the allegations set forth in the amended petition. Our reversal, of course, should not be understood as a decision that he should prevail on the merits of his claim. That will be determined by the trier of fact on the evidence, not on what the lawyers say the claim is.
REVERSED AND REMANDED WITH DIRECTIONS.
HERSEY, J., concurs.
POLEN, J., dissents with opinion.
POLEN, Judge, dissenting.
Judges at the trial and appellate levels often cite the prospect that a particular judicial action might "open the floodgates" for similar cases to be soon pouring into the already overloaded judicial hopper. This is not judicial paranoia, as some cynics might suggest. It is a reflection of reality. There can be no dispute that our judicial system is already overburdened to the point that it may soon collapse under its own weight. It is an appropriate exercise of judicial discretion for a court to decline to consider certain types of actions which previously had not been cognizable, which are not clearly authorized by rule, statute or case law, which often are attempts to relitigate that which was, could have, or should have been resolved previously, and which presently should not be entertained. Given this context, I would hold that the trial court in this case properly dismissed Mr. Gordon's petition.
The majority and I are in agreement that the facts appellant alleges, if proven, would tend to show that the former wife is guilty of extortion. Further, given the short duration of the marriage and the terms of the parties' settlement agreement, it is reasonable to suspect that she at least employed tactics of coercion and duress. Nevertheless, what today's majority decision will do is almost certain to "open the floodgates" for further judicial review of domestic relations cases previously thought to have been settled.[12] Moreover, there appears to be no time limitation in which to bring such petition for relief. Under the majority's decision, Mr. Gordon could have filed his petition two years, five years, even twenty years after the purported settlement.[13] The question also arises as to whether this rule is limited to domestic relations cases, or can also apply to permit a party to revisit any civil case[14] previously settled, whether or not such petition is brought within a year.
Lamb v. Leiter, 603 So.2d 632 (Fla. 4th DCA 1992), to the extent that it adds anything new to the law of relief from judgments *65 in domestic relations cases, should be limited to its facts.[15] The majority decision here expressly holds that the umbrella unfolded in Lamb is so broad as to encompass not only Mr. Gordon's petition but perhaps a myriad of others. Query: Does any spouse who may be facing some criminal charge, e.g., drugs, theft, or aggravated battery on the other spouse, have the right to seek relief more than one year after the settlement agreed to under the other spouse's threat of criminal action? What about spouses facing misdemeanor charges? Traffic infractions? Tax audits as opposed to criminal prosecution for non-filing? Since Lamb involves a medical condition of the coerced spouse, what about drug addiction? Alcoholism? Physical disabilities which are used by the non-disabled spouse to coerce agreements where the disabled spouse fears loss of rights with his or her children? A cold?[16]
Clearly, the majority relies upon Lamb as a basis to permit Mr. Gordon to relitigate his case. However, I must question whether, given the facts in that case, the majority could possibly have contemplated a scenario such as Mr. Gordon's, where both spouses had unclean hands and, most significantly, the one coming forward to seek relief was already paying the threatened penalty of his crime. Indisputably, Mr. Gordon presently finds himself in the worst possible scenario with which the former Mrs. Gordon threatened him.
I do not dispute that under certain instances, relief may be sought by independent action. The supreme court in DeClaire v. Yohanan, 453 So.2d 375 (Fla. 1984), explained that "prior to the adoption of Rule 1.540(b),[17] none of the stated grounds for a motion to set aside a judgment, with the exception of extrinsic fraud presented in an action in equity, could be used as the basis for seeking relief from a judgment." Id. at 378. Even then, however, relief was available only through an independent action in equity. Id. at 377. The Yohanan Court recognized that when rule 1.540(b) was enacted, it was intended to preserve the equitable remedy of an independent action where the party seeking to set aside a judgment establishes extrinsic fraud. Indeed, the language in the rule is explicit on this point. Interestingly, however, the court in the next breath provides, "[f]or better understanding, the circumstances under which a judgment may be challenged ..." and states, in pertinent part, that there is no time limitation under rule 1.540(b) or under an independent action where extrinsic fraud, which prevents a party from having an opportunity to present his case in court, is proven. Id. at 378. While it is clear from the rule that an independent action in equity would be available beyond the period of one year, I do not read the rule to include the rule itself as a vehicle for relief from extrinsic fraud where relief is sought pursuant to that rule by way of motion after one (1) year has passed from rendition of judgment.[18]
The supreme court in Yohanan argued vehemently against overextending the rule. *66 The court was faced with a case where the financial affidavit was fraudulent. In that case, it declined to extend the one-year limitation to cases involving financial affidavits in marital dissolution actions, because
[t]o approve the asserted public policy decision expressed by the district court in this case would require a change in the definitions of intrinsic fraud and extrinsic fraud. The district court's holding could not logically be restricted to false financial disclosures in dissolution proceedings. Such a holding would necessarily require an inclusion of false testimony given in affidavits, depositions, or at trial as fraud on the court. It would permit any final judgment to be attacked at any time if a party could allege that an intentional misrepresentation was made by affidavit, deposition, or testimony presented in the case. By so expanding the definition of fraud on the court, we would also be substantially expanding the grounds on which final judgments may be attacked. The Brown decision and the Fourth District's decision in the instant case[19] raise a major public policy question relating to how final judgments may be attacked and set aside. Public policy has always favored the termination of litigation after a party has had an opportunity for a trial and an appeal of the trial court's judgment. Consequently, the grounds upon which a final judgment may be set aside, other than by appeal, are limited in order to allow the parties and the public to rely on duly entered final judgments.
Id. at 380 (emphasis supplied). The court further reasoned that "[r]ule 1.540(b) broadened the grounds upon which final judgments may be attacked but we do not find it appropriate to further broaden these grounds by decision of this Court. If there is to be any change, it should be achieved through the rule-making process." Id. at 380. Thus, it is curious that notwithstanding the rule's silence on this matter, Yohanan appears to condone broadening the rule to grant relief beyond the one-year limitation in cases where extrinsic fraud is proven, as an alternative to an independent action filed in equity.
I also cannot share the majority's view that Berger v. Berger, 466 So.2d 1149 (Fla. 4th DCA 1985), is controlling here. While I acknowledge that the case involved one spouse threatening to report the other to the IRS, where the threatening spouse had actually prepared the fraudulent forms, the similarity stops there. First, Berger does not provide us with all of the underlying facts, i.e., how long after final judgment did the spouse alleging fraud challenge the settlement? Rule 1.540 is not mentioned in the opinion, nor is Yohanan. Second, the petitioner in Berger was not incarcerated for fraud committed upon the Internal Revenue Service. In a song made popular by the late Janis Joplin, it is stated: "Freedom's just another word for nothin' left to lose."[20] In fact, as that majority noted,
The record suggests that the husband would not in fact have turned her in to the I.R.S., and that she knew this perfectly well, because he was not only a part owner of the business, but was aware that cash was being taken out of it and was even preparing the tax returns which he knew to be false. Nevertheless, there are countless domestic cases where one spouse or the other will self-destruct rather than pay alimony or child support.
Id. at 1151. Thus, the majority could only speculate as to whether the threatening spouse would turn in the other and, if this occurred, what results would obtain. Under the property agreement's terms, Mrs. Berger gave up her interest in the marital residence, a truck, furnishings, cash and coins, and significantly, the primary residential custody of the parties' two minor children, aged 8 and 6. One has to wonder whether the husband would have turned the petitioner in to the IRS, being fully aware that he, too, would be implicated in the crime, very possibly incarcerated with the former wife, and leave the *67 children without either parent to care for them. Moreover, would the former husband have risked losing his liberty to save some alimony money? The only noteworthy fact that Berger and the instant case have in common is that both Mrs. Berger and Mr. Gordon made an economic decision based upon the circumstances visited upon them. What they do not share in common is that Mr. Gordon's untimely petition carries no risk to Mr. Gordon of prosecution or other undesirable consequences. In my view, neither Lamb nor Berger can justify the result in the instant case.
Another point on which the majority and I disagree is the procedural. I would hold that Mr. Gordon was barred from bringing his petition under Florida Rule of Civil Procedure 1.540(b). That rule provides, in pertinent part:
On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, decree, order, or proceeding for the following reasons: ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; ... . The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than 1 year after the judgment, decree, order or proceeding was entered or taken, except that there shall be no time limit for motions based on fraudulent financial affidavits in marital cases.... This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, decree, order, or proceeding or to set aside a judgment or decree for fraud upon the court.
The rule, interpreted literally, provides that where fraud (intrinsic or extrinsic) is alleged, the motion shall not be made more than one year after the judgment, decree, order or proceeding was entered or taken, unless the fraud alleged occurred in a financial affidavit in a marital case.[21] At bar, the husband's "petition" under rule 1.540(b) does not allege fraud in the financial affidavit as a result of his wife's threats to report him to the IRS. Therefore, there can be no other result but that appellant is procedurally barred from obtaining relief under rule 1.540(b).[22]
This court in Lamb v. Leiter, 603 So.2d 632 (Fla. 4th DCA 1992), reversed the trial court's denial of the wife's "petition" for relief from a final judgment of dissolution of marriage brought as an independent action.[23] At trial, the former husband had moved for a dismissal of the action on the ground that rule 1.540(b) precluded filing said action after the one-year limitation. This court noted that the wife had filed a separate, independent action; she did not seek relief under Rule 1.540(b). Id. at 634. As a result, her action was not precluded on timeliness grounds. Thus, in Lamb, we held: "It thus seems perfectly clear to us that a challenge based upon fraud on the court and brought as an independent action may be brought more than one-year [sic] after the judgment was entered." The majority in the case sub judice make clear the husband brought this action not as an independent action, but instead, as one under rule 1.540(b), and notes in a footnote "[w]e consider the substance of the papers rather than their title or denomination." *68 I am not advocating that we place form over substance. This is yet another expansion of the rule and, arguably, of a position taken in Lamb.
Accordingly, I would also hold that the husband at bar is not entitled to relief under rule 1.540(b), as he did not file a motion with the trial court within one year after the final judgment of dissolution was entered or taken.
NOTES
[1] His petition was filed in the dissolution of marriage action more than 21 months after the entry of the final judgment. He amended the petition within one month of filing. His amended petition contained the following statement:

"This is an action pursuant to Fla.R.Civ.P. 1.540 and is not limited to the one year time period under intrinsic fraud as defined by the Supreme Court of Florida in DeClaire v. Yohanan, 453 So.2d 375 (Fla. 1984)."
Although he labeled his application a "petition" instead of "motion", as rule 1.540(b) requires, we consider the substance rather than its title or denomination. See e.g., Schupler v. Eastern Mortgage Co., 160 Fla. 72, 33 So.2d 586 (1948) (equity regards substance over form when determining procedural and substantive rights). When he amended his petition, he also filed an independent action asserting a claim for damages against his former wife under the "Civil Theft" statute. Curiously the new action failed to contain a claim for relief from the judgment on the same grounds as had been asserted in the petition. The new action was consolidated with the dissolution of marriage action. When the court entered the final order we review today, he voluntarily dismissed the civil theft claim to facilitate appellate review.
[2] He admitted that he had executed the agreement despite advice from counsel to the contrary. He also says that he is currently incarcerated on tax related offenses and has been ordered to pay more than $2,600,000 in back taxes and penalties.
[3] See Fla.R.Civ.P. 1.540(b) ("On motion and upon such terms as are just, the court may relieve a party * * * from a final judgment * * * for * * * (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party * * *.").
[4] In this case, because his rule 1.540(b) petition was dismissed on a motion to dismiss, we accept his factual allegations as true and unrebutted.
[5] See Fla.R.Civ.P. 1.540(b)(3) (1991) ("The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, decree, order or proceeding was entered or taken."). We note that this part of the rule was amended in 1992 to add the following words: "except that there shall be no time limits for motions based on fraudulent financial affidavits in marital cases."
[6] He replies that after his arrest and incarceration, her threats and extortion no longer had any force or effect, thereby freeing him, as it were, to seek relief from the final judgment.
[7] There was testimony that he had also told friends that he "had the judge in his back pocket". We also noted that the record showed that she appeared without counsel in her "answer," admitting all of his allegations, and had prayed simply that the marriage be dissolved.
[8] See Cooper v. Cooper, 69 So.2d 881 (Fla. 1954) (duress is condition of mind produced by improper external pressure that practically destroys free agency of party who is thereby caused to do act or make contract not of own volition).
[9] This is no accident, as his petition expressly cites Berger and alleges that the extortion here is exactly the same as the extortion there.
[10] Section 836.05, Florida Statutes (1991) provides:

836.05 Threats; extortion.  Whoever, either verbally or by a written or printed communication, maliciously threatens to accuse another of any crime or offense, or by such communication maliciously threatens an injury to the person, property or reputation of another, or maliciously threatens to expose another to disgrace, or to expose any secret affecting another, or to impute any deformity or lack of chastity to another, with intent thereby to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his will, shall be guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
[11] He also responds that, if there truly are procedural defects in his pleading, a dismissal with prejudice is an abuse of discretion. We agree that if his consolidated action can be amended to set forth a proper basis for relief under the rule, it would be an abuse of discretion to dismiss the claim with prejudice.
[12] In Loss v. Loss, 608 So.2d 39 (Fla. 4th DCA 1992), the author of the instant majority opinion notes in his dissent:

In this case, the trial judge said on the record that the parties had agreed in his presence (but not on the record) to a comprehensive settlement agreement of their dissolution of marriage litigation. The effect of the nullification of that settlement on one of the litigants is bad enough. But this decision could also conceivably upset the finality the law attaches to consent judgments and settlement agreements. With the persistent growth in litigation in Florida, anything that erodes the usefulness of the settlement device can only be viewed with foreboding ... Id. at 43.
Few settlements occur without a later feeling that one has given up too much or accepted too little. It is very easy afterwards to say that one really did not actually agree to this or that, because one did not consider some now-discovered tax, or other, consequences. When we begin, as we apparently have here, to allow parties to upset consent judgments on such grounds, we might just as well repeal the mediation statutes and rules, forget about settlements and try every case filed (summary judgments not being available in most cases). Id. at 45.
[13] Such a lengthy delay may always be defended on the basis of laches, but this usually involves an evidentiary presentation.
[14] See Magula v. Infante, 616 So.2d 1191 (Fla. 4th DCA 1993).
[15] Lamb is readily distinguishable because there was no criminal behavior involved in that case. The petitioner was completely innocent of any wrongdoing and her rights with respect to her children were threatened by a spouse who threatened to use her affliction with multiple sclerosis to attack her fitness as a parent. Her ultimate decision to seek relief from that final judgment did not result from a subsequent cure, or from a situation where the worst scenario her spouse could have contemplated had come to pass.
[16] It is not my intention to make light of a serious area of inquiry; rather, I am suggesting the ludicrous results that could obtain with the majority's view on obtaining relief becoming the law of the Fourth District.
[17] Rule 1.540(b) was adopted in 1962 as Florida Rule of Civil Procedure 1.38(b) and was modeled after Federal Rule of Civil Procedure 60. Prior to its adoption, only what was defined as extrinsic fraud could form the basis for relief from judgment, and that relief could only be obtained by an independent action in equity. See Yohanan, 453 So.2d at 377.
[18] I do not deny that there are cases in our state where such relief has been granted, see, e.g., Brown v. Brown, 432 So.2d 704 (Fla. 3d DCA 1983) (although the wife's allegations that former husband had fraudulently induced her, as part of a property settlement agreement, to give note and mortgage to him did not show fraud upon the court, the allegations established extrinsic fraud, which would allow relief outside the one-year limitations period); however, I am troubled by the over-extension of the rule.
[19] The trial court in Yohanan denied relief and this court reversed, because it found that the husband's filing of a fraudulent financial affidavit was "fraud on the court."
[20] "Me and Bobby McGee," words and music by Kris Kristofferson and Fred Foster, copyright 1969 Temi Combine Inc.
[21] The exception for fraud in financial affidavits in marital cases became effective midnight on January 1, 1993. See In re Amendments to the Florida Rules of Civil Procedure, 604 So.2d 1110 (Fla. 1992).
[22] In DeClaire v. Yohanan, 453 So.2d 375 (Fla. 1984), which is factually distinguishable from the instant case, the court held that fraud on a financial affidavit did not constitute fraud upon the court; thus, petitioner-husband's filing of such affidavit did not provide sufficient grounds to set aside a property settlement agreement approved in the final judgment of dissolution of marriage three years prior to commencement of the action to set aside the agreement. As previously noted, however, the recent amendment to Rule 1.540(b) now extends the rule to permit filing a motion under the same rule beyond the period of one (1) year in those circumstances.
[23] The Lamb Court acknowledged that the proper name for the wife's pleading should have been "complaint," and thus the trial judge may have been misled by the term "petition" and viewed same as an application for an order under Rule 1.540(b). "When the complete text of the document and all succeeding papers are reviewed and considered, however, it is indisputable that this was an independent action to set aside the final judgment." Id. at 634.