WOLF, Judge.
Lori Lopez, appeals from an order denying her motion to reopen and set aside final judgment. The motion alleged that 1) extrinsic fraud had occurred as a result of deceptive practices of her former husband which precluded the wife from fully participating in the original dissolution proceedings, and 2) that the actions of the husband concealed from the court the fact that the wife was seven months pregnant at the time the original dissolution judgement was entered. We find that the trial court’s determination that there was no extrinsic fraud perpetrated upon the wife by the former husband is supported by competent substantial evidence, *109 but find that the trial court erred in determining that there must be a separate paternity action prior to the court considering custody and support obligations as to the child who was born alter the final judgement of dissolution.
The appellant filed a pro se petition for dissolution in December 1990, requesting primary residential custody óf the parties’ only minor child, Kathryn, born October 31, 1989. After her petition was filed, but before the husband answered, the child was taken to Philadelphia, Pennsylvania, to reside with the child’s paternal grandmother. The husband answered and counterpetitioned, seeking temporary and permanent custody of Kathryn. On March 12,1991, the court entered an order granting the husband temporary custody of Kathryn, and permitting the child to continue to reside in Philadelphia with the paternal grandmother.
On July 9, 1991, the parties entered into a stipulation and agreement regarding child custody, wherein the parties agreed that the child would maintain primary residence with the father with visitation rights for the mother. On July 26, 1991, the circuit court entered a final judgment of dissolution of marriage, incorporating the stipulation and agreement of the parties. At the final hearing of dissolution of marriage, the husband attended, but the wife did not.
There is a dispute between the parties concerning when the minor child was re-toned to Jacksonville from Philadelphia, and what role that played in the wife’s decision to sign the stipulated settlement and her decision to not attend the final hearing of dissolution.
In regard to the signing of the stipulation and agreement, the wife testified as follows:
Q Now, you signed some papers stipulating to giving Miguel custody of your first-born child as well as waiving further attendance in court. Could you explain to the court why you signed those papers?
A Because I wanted — I—all I knew is that I didn’t — she [the minor child] wasn’t there and that she’d be home if I cooperated with Miguel. I trusted that he would bring her home and that we would just five there and be with the kids.
Q Did you read the papers?
A Yes.
Q Did you understand them?
A I guess, as far as — I mean, all I knew is that I was supposed to have half of say of everything that she did and that she would be home if I — if I did what Miguel told me to do.
Q Did you willingly agree to those papers and to those terms?
A If it meant bringing Katie home.
Q So if Katie had not been an issue, would you have signed those papers?
A You mean just to get a divorce?
Q No, just — would you have signed over custody—
A Oh, if I knew I was going to get Katie? If I’d lose her anyway, no.
As to her failure to attend the final hearing, the appellant’s testimony is as follows:
Q Now, did you go to the final hearing of dissolution of marriage?
A No, I did not. I was told I didn’t have to go.
Q How pregnant were you at that time?
A Seven months.
Q Were you showing your pregnancy at that time?
A Yes.
Q If you had come to the court at that time, would the court have been obviously aware that you were pregnant?
A Yes.
Q And who told you not to come?
A Miguel told me he didn’t need me.
The husband testified that the agreement which the wife signed was what she wanted, and that he did not threaten or coerce her to sign the agreement or attach any conditions to her signing the agreement:
Q OK. How did it happen that you brought her to my office to sign those papers?
*110 A She called me up one day, and she said that she was tired of going to court and having all these headaches and that she was — she was not going to fight no one and whatever she needs to do, to do it.
Q And that’s when I called you [husband’s attorney] and you told me about the paper. And I replied it back to her, and she said, “OK. Just tell me when, and come pick me up.”
The husband also testified that the minor child had been in Jacksonville since May 1991 (Mothers’ Day), and was not in Philadelphia at the time the agreement was signed, as indicated by the wife in her testimony. The husband’s brother also testified to the fact that the child was in Jacksonville on Mothers’ Day and not in Philadelphia. Therefore, the wife’s claim that the husband had coerced her by saying he would return the child to her (presumably from Philadelphia to Jacksonville) if she signed the stipulation and agreement loses its force in view of the testimony that the child was already in Jacksonville prior to and at the time of the signing of the stipulation and agreement. There was also testimony that when the child was brought to Jacksonville in May 1991, she remained there with the father and was not returned to Philadelphia until September 1992.
Based on the testimony heard at the hearing, the trial court found “that said Stipulation and Agreement and waiver were executed freely and voluntarily by the former wife with knowledge of the consequences and after being advised by the husband’s attorney that he could not provide legal advice to her and with the suggestion that she consult an attorney of her choice to discuss any questions she had concerning her rights and she freely and voluntarily declined to do so.” The trial court denied the motion to reopen or set aside the final judgment, and declined to address the child custody issue pending determination of paternity.
Rule 1.540(b), Florida Rules of Civil Procedure, provides for relief from a judgment on the grounds of extrinsic fraud. In DeClaire v. Yohanan, 453 So.2d 375 (Fla.1984), the Florida Supreme Court discussed rule 1.540(b), and defines “extrinsic fraud” as the
prevention of an unsuccessful party [from] presenting his case, by fraud or deception practiced by his adversary; keeping the opponent away from court; falsely promising a compromise; ignorance of the adversary about the distance of the suit or the acts of the plaintiff; fraudulent representation of a party without his consent and connivance in his defeat; and so on.
Id. at 377, quoting Fair v. Tampa Elec. Co., 158 Fla. 15, 27 So.2d 514 (1946). In Whitman v. Whitman, 532 So.2d 82 (Fla. 3d DCA 1988), the 3rd DCA found extrinsic fraud where “the complaint alleged facts showing that the husband and the attorney, by collusion and deception, prevented the wife from fully presenting her case to the court....” Id. at 83. There, the court found the husband’s conduct fit the DeClaire description of extrinsic fraud, which, if proved, “would support appellant’s independent action for relief from judgment.” Id. In Lamb v. Leiter, 603 So.2d 632 (Fla. 4th DCA 1992), the 4th DCA held that fraud existed where the wife alleged that the former husband had coerced her to prevent her from litigating child custody, alimony, and property division, and where the court demonstrated that she appeared without counsel and simply admitted all the allegations. There, the reviewing court said, “Without attempting to state for all time what circumstances might amount to a fraud in the court, we can competently say that what was alleged here fills the bill.” Id. at 635.
In both Whitman and Lamb, the claim of extrinsic fraud had to do with an earlier agreement between the parties which was incorporated into the final dissolution of marriage. In Whitman, the wife also alleged that the husband fraudulently induced her to forego obtaining independent legal counsel. In addition, the failure of the parties to notify the trial court of appellant’s pregnancy may result in a finding of extrinsic fraud which will justify setting aside a final judgment. M.A.F. v. G.L.K., 573 So.2d 862 (Fla. 1st DCA 1990). If, however, the party seeking to set aside the final judgment knowingly participates in the decision not to provide the omitted information to the court, relief shall not be granted. Guerriero v. Schaub, 579 *111 So.2d 370 (Fla. 4th DCA), rev. denied, 591 So.2d 181 (Fla.1991).
Although the instant case as presented by the appellant appears to be factually similar to Whitman, Lamb, and M.A.F., the judge’s findings that there was no extrinsic fraud perpetrated upon the wife when she executed the stipulation and agreement are supported by testimony presented at the hearing which indicates that the wife entered into the stipulation and agreement and the waiver voluntarily, she voluntarily decided not to appear at the hearing while pregnant, and that she knowingly and voluntarily declined to seek legal counsel even when her husband’s attorney suggested that she should consult an attorney to discuss any questions she had.
The trial court’s ruling, however, that there must be an independent determination of paternity where the wife would have the burden of establishing paternity prior to seeking support and determining custody, is in error. The circuit court has inherent jurisdiction to address the custody and welfare of minor children. Waters v. Waters, 578 So.2d 874 (Fla. 2d DCA 1991). In a situation where the child is conceived during the marriage, the court should assume that the welfare and custody of the child is properly addressed within the dissolution proceeding, and the burden should be placed on the party seeking to prove otherwise. In the case of In re: The matter of Adoption of Baby James Doe, 572 So.2d 986 (Fla. 1st DCA 1990), the court said
A child bom or conceived during a lawful marriage is a legitimate child. Therefore, one seeking to challenge that paternity of such child “has a strong, albeit rebuttable, presumption of legitimacy to overcome.” The rule is that the “proof must be sufficiently strong to clearly remove the presumption of legitimacy.”
Id. (citations omitted). In Dennis v. Department of HRS, 566 So.2d 1374, 1376-1377 (Fla. 5th DCA 1990); rev. denied, 577 So.2d 1326 (Fla.1991), the Fifth District Court of Appeal stated the general rule as follows:
[I]n Florida, an illegitimate child is one both conceived and born at a time its mother is not lawfully married and that, conversely, a child conceived before but born while its mother is lawfully married to its reputed father is a legitimate child by virtue of section 742.091 and a child conceived while its mother is lawfully married but bom within a period of gestation after the termination of the mother’s state of lawful marriage is a legitimate child.
By not vacating the judgment in the present case to address custody and support, the court has transferred the burden of proof to the wife. In order to protect the child’s interests, someone must bring an action of paternity and prove paternity when ordinarily the husband should have to prove nonpa-ternity first. This result is entirely inappo-site to the intention and purpose of the presumptions of legitimacy, i.e., to protect the child. Moreover, ignoring these presumptions discriminates against those least able to protect themselves, the children.
The only party benefitting by the trial court’s ruling is the husband. The husband is the party who failed to inform the court of the wife’s pregnancy at the time of the final hearing, signed the birth certificate, and who openly lived with the child, claiming her as his daughter. Under these circumstances, the burden should have been placed on the father to demonstrate that the court should not properly consider the support, custody, and welfare of the child as part of the dissolution proceedings.
The judgment of the trial court is reversed and remanded for further proceedings to determine custody and support of the minor child.
ERVIN and JOANOS, JJ., concur.