[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-13819

_____

STEPHEN SEWALK,
an individual,
SMS BUSINESS ENTITIES, INC.,
a Colorado corporation,

                                        Plaintiffs-Appellants,

*versus*

VALPAK DIRECT MARKETING SYSTEMS, LLC,
a Delaware limited liability company,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:22-cv-00168-AAS

_____

Before WILSON, JILL PRYOR, and BRASHER, Circuit Judges.

PER CURIAM:

Plaintiffs-Appellants Stephen Sewalk and SMS Business Entities, Inc. (SMS) (collectively, Appellants) appeal from two orders: (1) an order denying their motion to reopen the case "due to extortion in procuring [the] settlement agreement" (Motion to Reopen); and (2) an order denying their "motion for leave to disclose communications of [a] July 12 mediation pursuant to Local Rule 4.03(g) and for leave to resubmit [their] motion to reopen [the] case" (Motion for Leave)—a motion that the district court construed as a motion for reconsideration.

After careful review and with the benefit of oral argument, we conclude that we have appellate jurisdiction over both orders. And because the district court did not abuse its discretion in denying Appellants' motions here, we affirm.

## I.     FACTUAL & PROCEDURAL BACKGROUND

Valpak Direct Marketing Systems, LLC (Valpak), operates a full-service marketing agency that advertises for around 35,000 local businesses. On March 11, 2019, Valpak and SMS, a Colorado-based corporation, entered into the Valpak Direct Marketing Systems, Inc. Franchise Agreement (the Franchise Agreement), in

which Valpak granted SMS an exclusive franchise (the Franchise) to operate and sell advertising under the Valpak name in southern Colorado. Stephen Sewalk is SMS's principal and an "Owner" under the Franchise Agreement, although he is not a party to that agreement.

On July 28, 2021, Sewalk filed a Chapter 11 bankruptcy petition,[1] which listed the value of the Franchise as $12,000. *See In re Sewalk*, No. 1:21-bk-13895 (Bankr. D. Colo. 2021). Upon filing of the petition, an automatic stay was issued, *see* 11 U.S.C. § 362(a)(3), barring "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." Under the Bankruptcy Code, debtors, such as Sewalk, are required to file bankruptcy schedules that include a complete list of all their assets, liabilities, and the contracts to which they are parties. *See* Fed. R. Bankr. P. 1007(b). Sewalk filed several bankruptcy schedules in his bankruptcy case but did not identify the Franchise Agreement on those schedules as an asset or contract, nor did he identify Valpak as a creditor or contract counterparty. The bankruptcy schedules, however, did disclose that Sewalk held an interest in SMS, which Sewalk declared under penalty of perjury, valued at $12,000.

Sewalk failed to have a plan of reorganization confirmed in his bankruptcy case, which was ultimately dismissed without objection on November 15, 2021. However, on November 3, 2021,

---

[1] Sewalk jointly filed the bankruptcy petition with his wife. Because she is not a party to this case, we simply refer to the bankruptcy case as Sewalk's.

before the November 15 dismissal, Sewalk informed Valpak of the bankruptcy petition. In response, on November 11, 2021, Valpak terminated the Franchise Agreement with SMS. In its termination letter to SMS, Valpak invoked section 13.1(a)(i) of the Franchise Agreement, which allows Valpak "to terminate [the Franchise Agreement] by delivering a written notice to [SMS]" if Sewalk, as Owner of SMS, "files or has filed against [him] a petition in bankruptcy."

Then, on January 1, 2022, Appellants sued Valpak in the Middle District of Florida, alleging that: (1) Valpak violated the automatic stay as to the assets of Sewalk's bankruptcy estate by terminating the Franchise Agreement before dismissal of the bankruptcy action; and (2) Valpak materially breached the Franchise Agreement by terminating it without cause. Appellants claimed that they suffered damages, including the loss of Sewalk's Franchise, which they valued at around $1,000,000. Valpak moved to dismiss Appellants' complaint. The magistrate judge[2] directed the parties to attend mediation in accordance with the Middle District of Florida's Local Rules.

Before engaging in mediation, the parties entered into a mediation agreement, which provided that the parties "shall maintain the confidentiality of the mediation." The mediation took place on July 12, 2022, via Zoom, with both parties represented by counsel.

---

[2] The parties consented to U.S. Magistrate Judge Amanda Arnold Sansone's jurisdiction in accordance with 28 U.S.C. § 636(c).

The mediation was conducted by a jointly selected mediator and resulted in a confidential settlement agreement.

Then, on July 20, 2022, the district court, after receiving the mediation report on July 28, 2022, dismissed the case without prejudice, "subject to the right of the parties, within sixty (60) days of the date of this order, to submit a stipulated form of final order or judgment, request an extension of time, or for any party to move to reopen the action upon a showing of good cause." The order explained that, after sixty days, "the dismissal will be with prejudice."

On August 15, 2022, Appellants filed their Motion to Reopen, at which point they also asked for sanctions against Valpak and its counsel. Appellants claimed that, at the mediation, they were "criminally extorted" by Valpak, which had allegedly threatened to report Appellants to the authorities for bankruptcy fraud if Appellants did not agree to the settlement agreement terms in one hour. In support of these allegations, Appellants attached an affidavit from Sewalk, which referenced statements allegedly made during the mediation. But Appellants failed to obtain permission of the court or Valpak to disclose any of the statements made during the mediation. Valpak opposed the Motion to Reopen.

On September 6, 2022, the district court denied Appellants' Motion to Reopen and directed the Clerk to strike the motion for including confidential mediation negotiation details. The district court first stated that Appellants' Motion to Reopen "improperly divulge[d] in great detail what occurred during the parties'

confidential mediation." The court then construed Appellants' claims of criminal extortion as an argument for setting aside the settlement agreement based on coercion and duress. Applying Florida law, the district court explained that Appellants must prove that (1) the settlement agreement was executed involuntarily, and (2) Valpak exerted some improper and coercive conduct over Appellants to effectuate the settlement. The court, however, found that "Valpak's negotiation position at the mediation was not extortion, coercion, or duress" under Florida law, relying on our unpublished decision in *United States v. Contents of Bank of America*, 452 F. App'x 881, 882 (11th Cir. 2011) (per curiam), which stated that "Florida law appears to hold that the threat of criminal prosecution does not constitute duress and will not justify rescission of the settlement agreement." Thus, Appellants had established neither that the settlement agreement should be set aside nor that good cause existed for reopening the case.

On September 23, 2022, Appellants filed their Motion for Leave where Appellants asked permission to disclose communications from the July 22 mediation and resubmit their motion to reopen the case. Appellants argued that the order denying their motion to reopen was clearly erroneous because Valpak did not provide any evidence that the threat of reporting them for alleged bankruptcy fraud was legally justified. Valpak opposed Appellants' motion, asserting that it was a poorly disguised motion for reconsideration of the order denying Appellants' motion to reopen the case and that the September 6 order was fully supported by the law and record.

On November 9, 2022, the district court construed Appellants' Motion for Leave as a motion for reconsideration and denied the motion. The court explained that Appellants raised identical arguments to those in their prior motion and requested leave to file the same Sewalk affidavit with confidential mediation testimony that was previously stricken. Further, there was neither an intervening change in controlling law nor a need to correct clear error or prevent manifest injustice. The court also noted that Appellants cited two Florida cases for the first time—*Berger v. Berger*, 466 So. 2d 1149 (Fla. 4th Dist. Ct. App. 1985) and *Franklin v. Wallack*, 576 So. 2d 1371 (Fla. 5th Dist. Ct. App. 1991)—and explained that both cases involved "family law marital property disputes and are thus factually unanalogous to the present dispute." In citing Judge Sharp's dissent in *Franklin*, the district court noted that "the sum of Florida case law appears to state 'duress cannot be established by proof that a guilty person was threatened with criminal prosecution, where the threat has a connection with the demand for which compensation is sought.'"[3] Therefore the court said that "to the extent Florida law allows for the threat of criminal prosecution as evidence supporting a contractual defense of duress, such a defense necessitates a finding that 'the threat to prosecute had to be itself unjustified or illegal.'"[4]

Appellants filed their notice of appeal of the court's orders on their Motion to Reopen and Motion for Leave with this Court

---

[3] 576 So. 2d at 1373 (Sharp., J., dissenting).

[4] *Id.*

on November 11, 2022.  Then, at the district court, Appellants moved to supplement the record on appeal with the Sewalk affidavit pursuant to Federal Rule of Appellate Procedure 10(e).  Valpak opposed this motion, and the district court denied the motion, explaining that Appellants failed to show that the proposed documents were omitted from the appellate record by error or accident as required by Federal Rule of Appellate Procedure 10(e).

After Appellants filed their initial brief in this appeal, they moved to supplement the record with the Sewalk affidavit under Rule 10(e).  Appellants argued that the Sewalk affidavit should be included in the record under Rule 10(e)(3) on the grounds that it is necessary for this court to have a fair understanding of what occurred in the proceedings below.  Valpak opposed this motion.

We originally carried Appellants' motion to supplement the motion with the case but granted their request before oral argument.  Sewalk filed his affidavit under seal, and we have considered that affidavit in making our decision.[5]

## II.    ANALYSIS

On appeal, Appellants contend Florida law provides that extortion is grounds for voiding a settlement agreement.  They argue that they have alleged a prima facie case of extortion by Valpak during the mediation—based on the allegations made in their

---

[5] Because Sewalk's affidavit references confidential mediation statements, this opinion only uses broad descriptions of what occurred without mentioning specific statements from the affidavit.

stricken motion to reopen the case and the accompanying Sewalk affidavit—such that an evidentiary hearing should have been held on their motion.

In response, Valpak first asserts that we lack appellate jurisdiction over the district court's order denying Appellants' Motion to Reopen because: (1) Appellants did not file their notice of appeal of that order within the thirty-day window required by Federal Rule of Appellate Procedure 4(a), and (2) Appellants' Motion for Leave does not qualify as one of the enumerated motions set forth in Rule 4(a)(4) to toll the deadline to file a notice of appeal. Valpak also argues that the district court's orders denying Appellants' Motion to Reopen and Motion for Leave should be affirmed for the reasons stated in those orders.

We first address Valpak's argument that we lack appellate jurisdiction, then move to the merits of Appellants' appeal.

## A. Appellate Jurisdiction

We are required to review our appellate jurisdiction de novo because "[w]e have a duty to assure ourselves of our jurisdiction at all times in the appellate process." *Butler v. Gualtieri*, 41 F.4th 1329, 1334 (11th Cir. 2022) (quotations omitted).

"In a civil case, except as provided in Rules 4(a)(1)(B), 4(a)(4), and 4(c), the notice of appeal . . . must be filed with the district clerk within 30 days after entry of the judgment or order appealed from." Fed. R. App. P. 4(a)(1)(A). When a party files certain enumerated

motions[6] under the Federal Rules of Civil Procedure—and does so within the time allowed by those rules—"the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion." Fed. R. App. P. 4(a)(4)(A). Rule 4(a)'s thirty-day time limit is "'mandatory and jurisdictional.'" *Campbell v. Wainwright*, 726 F.2d 702, 703 (11th Cir. 1984) (quoting *Browder v. Dir., Ill. Dep't of Corr.*, 434 U.S. 257, 264 (1978)).

Valpak contends that we lack jurisdiction over the district court's order denying Appellants' Motion to Reopen the case because Appellants' notice of appeal was untimely as to that order. Appellants filed their notice of appeal of the September 6, 2022, order on November 11, 2022—more than a month after Rule 4(a)'s thirty-day deadline. But Appellants filed a "motion for leave to disclose communications of [a] July 12 mediation pursuant to Local Rule 4.03(g) and for leave to resubmit [their] motion to reopen [the] case" on September 23, 2022. Valpak asserts that Appellants' Motion for Leave does not fall within any of the enumerated motions set forth in Rule 4(a)(4) and that, as such, it did not toll Rule

---

[6] These enumerated motions are: (i) for judgment under Federal Rule of Civil Procedure 50(b); (ii) to amend or make additional factual findings under Federal Rule of Civil Procedure 52(b); (iii) for attorney's fees under Federal Rule of Civil Procedure 54 if the district court extends the time to appeal under Federal Rule of Civil Procedure 58; (iv) to alter or amend the judgment under Federal Rule of Civil Procedure 59; (v) for a new trial under Federal Rule of Civil Procedure 59; or (vi) for relief under Federal Rule of Civil Procedure 60 if the motion is filed no later than twenty-eight days after the judgment is entered.

4(a)'s thirty-day deadline to file the notice of appeal of the September 6 order.

But while Appellants' Motion for Leave does not rely on or reference any of the Rules listed in Rule 4(a)(4), e.g., Rule 59, we have stated that "[w]hether a motion for post-judgment relief can be categorized as a motion under Rule 59 is not determined by whether the movant so labels it. Rather, the court must determine independently what type of motion was before the district court, depending upon the type of relief requested." *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1272 (11th Cir. 2001) (quotations omitted). In their Motion for Leave, Appellants directly challenged the district court's previous order as "clearly erroneous." The request seeking leave to file the Sewalk affidavit was just one part of their challenge to the order. In other words, Appellants' motion sought reconsideration of the merits of the dispute, which means Rule 59 applies. *See id.* Further, Appellants' Motion for Leave cited a Middle District of Florida case setting forth the standard for reconsideration, and the district court construed their motion as one for reconsideration, although the court did not specifically list either Rule 59 or 60.

Therefore, Appellants' Motion for Leave is best construed as a Rule 59(e) motion. Appellants filed their motion within Rule 4(a)'s thirty-day window, and the motion thus tolled the time for Appellants to file the notice of appeal as to the September 6 order. And because Appellants filed their notice of appeal within thirty

days of the order denying their Motion to Leave, we have jurisdiction to consider Appellants' appeal of both orders.

We now turn to the merits of the appeal.

## B. Merits

We review the denial of a motion to reopen a case because a settlement agreement should be set aside for an abuse of discretion. *Cf. Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1485 (11th Cir. 1994). We also "review a district court's denial of a motion for reconsideration for abuse of discretion." *See Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1254 (11th Cir. 2007). But we "review *de novo* the district court's interpretation of Florida law." *Int'l Fid. Ins. Co. v. Americaribe-Moriarty JV*, 906 F.3d 1329, 1335 (11th Cir. 2018).

We first turn to the district court's order denying Appellants' Motion to Reopen. Appellants argue that extortion is grounds for voiding a settlement agreement under Florida law and that they have alleged a prima facie case of extortion. As a result, the district court should have found good cause for setting aside the settlement agreement.

As a federal court sitting in diversity, we must apply the substantive law of Florida in this case. *See Fioretti v. Mass. Gen. Life. Ins. Co.*, 53 F.3d 1228, 1235 (11th Cir. 1995). When Florida law is unclear, we make an *Erie* guess as to how the Florida Supreme Court would rule on the issue. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 80 (1938); *Nunez v. Geico Gen. Ins. Co.*, 685 F.3d 1205, 1207 (11th Cir. 2012). And that rule requires us to "follow decisions by the intermediate appellate court of the state except where there is a strong

indication that the state supreme court would decide the matter differently." *Chepstow Ltd. v. Hunt*, 381 F.3d 1077, 1086 (11th Cir. 2004).

"A settlement agreement is a contract and, as such, its construction and enforcement are governed by principles of Florida's general contract law." *Schwartz v. Fla. Bd. of Regents*, 807 F.2d 901, 905 (11th Cir. 1987). "[A] plaintiff who executes a release within the context of a settlement pursuant to the advice of independent counsel is presumed to have executed the document knowingly and voluntarily absent claims of fraud or duress." *Myricks v. Fed. Rsrv. Bank of Atlanta*, 480 F.3d 1036, 1041 (11th Cir. 2007) (quotations omitted). And "Florida law favors the finality of settlements." *Pettinelli v. Danzig*, 722 F.2d 706, 710 (11th Cir. 1984).

In favoring finality, Florida case law demonstrates that the justified threat of criminal prosecution does not constitute duress under Florida law and will not justify setting aside a settlement agreement. For context, we will discuss three Florida Supreme Court cases that articulate this relevant principle.

In 1907, the Florida Supreme Court recognized a general rule that "in order to obtain relief against a contract made under threats of criminal prosecution," the plaintiffs must show that the "threats were of *unlawful* imprisonment." *Burton v. McMillan*, 42 So. 849, 851 (Fla. 1907) (emphasis added). In *Burton*, Mr. Beverly Burton worked as a state employee and his supervisor, A.M. McMillian, believed Mr. Burton to be embezzling public funds. *Id.* at 849. After agreeing to transfer property to avoid criminal charges

14                     Opinion of the Court                    22-13819

against her husband, Mrs. Mary Burton sued to vacate the transfer because of duress in light of the threat to charge Mr. Burton with criminal prosecution of embezzlement. *Id.* at 850. But despite recognizing the general rule, the court did not apply it here because Mrs. Burton "has been sick with a nervous disease for many years, and her nerves were so affected, and her mind so weakened by the shock" of the criminal prosecution. *Id.* Thus, the Florida Supreme Court found that the transaction should have been vacated. *Id.* at 850–51.

In 1937, the Florida Supreme Court applied this general rule. *Tyler v. Hill Bros.*, 173 So. 147, 150 (Fla. 1937) (per curiam). In *Tyler*, Grady Tyler worked at Hill Bros., Inc. as a sales representative and his accounts were found to be short. *Id.* at 148. The company's representative stated to Tyler's brother that "unless satisfactory arrangement and adjustment of the shortage [in funds] was made," the company would bring a criminal prosecution against Tyler for embezzlement. *Id.* Tyler's brother executed a mortgage to the company and sought to void that mortgage. *Id.* at 148–49. But the Florida Supreme Court rejected the argument that "the mortgage was procured by blackmail" because there was "neither any plea nor [was] there any evidence in the record to show that [the company] at any time *maliciously* threatened to accuse another of any crime or offense." *Id.* at 150 (emphasis added). The court also noted that "[t]he facts in this case are entirely different from those" in *Burton*. *Id.*

The next year, the Florida Supreme Court decided that *Burton* controlled instead of *Tyler* in *Sheldon v. Wilfore*. 186 So. 508, 510 (Fla. 1939). In *Sheldon*, Mr. Wilfore handled money for his employer and was required to keep proper accounting of all his accounts, but the accounts were found to be $15,000 short. *Id.* at 508–09. Ms. Wilfore was informed that if she executed a deed to her property, then there would be no criminal prosecution against her husband. *Id.* at 509. The Wilfores moved to dismiss the foreclosure proceedings on the property, which the trial court granted. *Id.* at 508. Like *Burton*, the court focused on the fact that Ms. Wilfore "had been sick with a nervous disease, and that her mind was shocked by" the embezzlement allegations against her husband in affirming the decision to dismiss the foreclosure proceedings. *Id.* at 509–10. The Florida Supreme Court noted that the case was ruled by its decision in *Burton* but not *Tyler*. *Id.* at 510.

Synthesizing these cases, the Florida Supreme Court recognizes the general rule that a threat of lawful criminal prosecution will not constitute duress and will not justify obtaining relief from a contract. Although the court has identified factual scenarios (e.g., where involved parties suffer mental and/or physical harm as a result of the threat) where this rule would not apply, Florida's intermediatory appellate courts have applied the general rule.

Florida's First District Court of Appeal reiterated this general rule in *Norris v. Stewart*, specifically noting that "[d]uress . . . requires a showing the act of the party compelling obedience of another is unlawful or wrongful." 350 So. 2d 31, 31 (Fla. 1st Dist.

Ct. App. 1977) (per curiam). There, Mr. Norris received $15,000 from Monroe Stewart to invest in property, and Mr. Norris misappropriated the funds. *Id.* Stewart confronted Mr. Norris, saying he would take the matter to the authorities. *Id.* Meanwhile, Mrs. Norris overheard the conversation and executed a promissory note for the amount so that her husband would not go to jail. *Id.* Mrs. Norris sought to get out of the promissory note citing *Burton* and *Sheldon*, but the court found those cases did not apply because there was no showing "that Stewart's intimations were illegal." *Id.* at 31–32. Instead, the court cited *Tyler* with approval for its resolution. *Id.* at 32.

The Fifth District Court of Appeal again recognized this general rule, quoting *Norris*. *Franklin v. Wallack*, 576 So. 2d 1371, 1372 (Fla. 5th Dist. Ct. App. 1991). Dennis and Voncile Franklin executed a mortgage on a property they owned in favor of Mrs. Franklin's employer, Michael Wallack. *Id.* at 1371. Wallack discovered shortages in his firm accounts and confronted the wife, who admitted she had taken a sum of money. *Id.* Wallack "indicated he would not inform the authorities about [the wife's] theft, if [the couple] would execute a note for $20,000.00 and a mortgage on their residence." *Id.* The Franklins argued that it was "duress to 'threaten' an innocent person with prosecution of his spouse for an admitted crime unless he joins in the pledge of property owned jointly by the innocent as well as guilty spouse to secure the victim's loss." *Id.* The court disagreed, stating that it was a "a case in which an innocent third party—in order to prevent legitimate prosecution of a loved one—pledges property (in this case joint

property) to secure repayment of the damages suffered by the victim." *Id.* at 1372. The court in *Franklin* noted this tension between *Tyler* and *Burton/Sheldon*. *Id.* Specifically, the court explained that *Burton/Sheldon* found "the instruments were invalid less because of the threat than because of the lack of capacity to execute the instrument caused by the wife's mental state." *Id.*

Considering this case law, we agree with the district court that Florida law recognizes that a threat of lawful criminal prosecution will not constitute duress and will not justify obtaining relief from a contract—and, as in this case, nor will it justify rescission of a settlement agreement.

Like we discussed above, Sewalk sought and received permission to file with this Court his affidavit detailing what happened at the mediation proceedings. Also in the record is Valpak's affidavit submitted in response to Sewalk's motion. Sewalk says Valpak threatened to turn Sewalk in for bankruptcy fraud if Sewalk did not agree to settle with Valpak. Valpak vehemently denies this allegation. Like the district court, we assume that Valpak threatened to report Appellants for bankruptcy fraud in order to obtain the settlement.[7]

---

[7] Part of Appellants' argument is that we should return this case to the district court for an evidentiary hearing, but that is not necessary. Even if we remanded to the district court for a factual determination that Valpak did threaten Sewalk, it still would not help Appellants in the analysis of whether the threat was justified.

To commit bankruptcy fraud and violate 18 U.S.C. § 152, the person must "knowingly and fraudulently make[] a false oath or account in or in relation to any case under title 11." 18 U.S.C. § 152(2). "The false oath must pertain to a material matter." *United States v. Ward*, 197 F.3d 1076, 1079–80 (11th Cir. 1999).

Sewalk filed for bankruptcy and listed his business as having a specific valuation, but then listed a different valuation in the complaint here and in a different case in which Sewalk had sued the prior franchise owner. Based on that information, Valpak justifiably believed that Sewalk had "knowingly and fraudulently" made false statements under oath. 18 U.S.C. § 152(2).

Sewalk clearly meets the requirement that the statement was made under oath, and Sewalk doesn't engage with Valpak's arguments that the statements were false or material. The valuation of SMS was material to the bankruptcy proceedings. Although it is mostly circumstantial evidence, it is likely that Sewalk made false statements about the value of SMS. Sewalk argues that he lacked the requisite intent under the statute—knowingly making false statements. Sewalk's affidavit supports this argument. But no evidence suggests that Valpak knew that Sewalk had prepared his own petition because Sewalk was represented in those proceedings, and there was no outward indication that Sewalk's counsel did not know what he was doing. As a result, Valpak's threat was of lawful criminal prosecution for bankruptcy fraud and does not amount to duress.

Appellants argue that even if the threat was justified, the threat still amounted to extortion, citing Florida's extortion statute, *see* Fla. Stat. § 836.05. Accordingly, they argue that Valpak's alleged extortion is sufficient to void the settlement agreement between the parties as seen in Florida case law. Section 836.05 provides, in relevant part:

> Whoever, either verbally or by a written or printed communication, maliciously threatens to accuse another of any crime or offense . . . with intent thereby to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will, commits a felony of the second degree . . . .

The Florida Supreme Court has explained that it follows the plain text of a statute, wherein "the words of a governing text are of paramount concern, and what they convey, in their context, is what the text means." *Coates v. R.J. Reynolds Tobacco Co.*, 375 So. 3d 168, 171 (Fla. 2023) (citing Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012)). Therefore, at first read, Appellants' argument makes sense based upon the text of § 836.05. And Appellants contend that Valpak threatened to report Sewalk for bankruptcy fraud, thereby accusing Sewalk of a crime. This threat would pressure Appellants to settle with Valpak on their breach of contract claim, allegedly worth $1,000,000, for far less than that amount. The settlement would result in Valpak's pecuniary gain—i.e., only paying a smaller amount versus what Appellants were originally seeking.

But how does Florida's criminal extortion statute square with the general rule that Florida has adopted—that a legally justified threat cannot justify the rescission of a contract?  To answer this question, Appellants point to *Berger v. Berger*, 466 So. 2d 1149 (Fla. 4th Dist. Ct. App. 1985).

In *Berger*, the husband and wife entered into a marital settlement agreement.  466 So. 2d at 1150.  During the settlement negotiations, the husband insisted that the wife "sign it or he would turn her and her partners in to the Internal Revenue Service," as "the wife had been failing to report substantial cash receipts from the operation of her beauty salon business."  *Id.*  The wife's "unrebutted testimony [was] that fear of the I.R.S. [was] the only reason that she signed it."  *Id.*  While "[t]he husband argue[d] that the only reason that he made these threats was to make sure that the wife would not try to hide the level of her income in the divorce proceedings in order to secure more alimony," the Florida court found that the husband had committed the crime of extortion under Florida law.  *Id.* at 1150–51.  The court explained that while "the husband had a legal right to actually turn her in to the I.R.S. and that a claim of coercion cannot be predicated on a threat to do an act which the person has a lawful right to do," he did "not have the right to threaten to do it *for his own pecuniary advantage*."  *Id.* at 1151.  The court found "clear and convincing evidence that the wife signed this agreement solely because of her husband's threat to turn her and her partners in to the I.R.S.," i.e., the wife had not voluntarily entered into the settlement agreement.  *Id.*

Most of the other cases that cite *Berger* involve martial disputes.[8] *See Bates v. Bates*, 345 So. 3d 328, 336 (Fla. 3d Dist. Ct. App. 2021) (discussing *Berger* in relation to a prenuptial agreement that could have been invalidated had the evidence shown that the husband obtained his wife's signature by threatening to tell her Catholic family about her abortion); *Ziegler v. Natera*, 279 So. 3d 1240, 1243 (Fla. 3d Dist. Ct. App. 2019) (citing *Berger* to support its holding invalidating a prenuptial agreement where the husband had threatened to call off the marriage and impede his wife's immigration to the United States unless she signed it); *see also Gordon v. Gordon*, 625 So. 2d 59, 62–63 (Fla. 4th Dist. Ct. App. 1993) (finding that the principles of *Berger* apply even when relief is sought more than a year after the allegedly coerced and duress-induced action or settlement).

Appellants ask us to take a broad reading of *Berger* without considering the holdings in *Tyler*, *Norris*, or *Franklin*. We decline to do so. Florida courts lead us to this result. Neither the criminal extortion statute nor *Berger* provide a "strong indication" for why we should not follow older Florida Supreme Court cases and

---

[8] Another notable case that cites *Berger* comes from a criminal case at the First District Court of Appeal. *See Duan v. State*, 970 So. 2d 903, 906 (Fla. 1st Dist. Ct. App. 2007). In *Duan*, the appellate court cites *Berger* for the proposition that the defendant committed extortion by threatening to testify falsely at trial even if the defendant had a legal right to testify in general. *Id.* Like Florida's treatment of extortion in marital-related disputes, the courts want to discourage individuals threatening to testify falsely in criminal cases because false testimony can and has resulted in the loss of liberty for all too many defendants.

22                    Opinion of the Court                    22-13819

Florida intermediary courts.[9]  *Chepstow*, 381 F.3d at 1086.  *Berger* deals specifically with the end of a marriage and the disputes that arise from those situations.  Further, the cases that cite *Berger* for the proposition that a person does not have a right to threaten for pecuniary gain, even if it is a lawful right, are in the family law context.  Considering this case law, Florida courts are more aware of the delicate nature of disputes within familial relationships and how that can "present an irresistibly tempting occasion for a dominating party to use coercion and duress, or extortion, to force a weaker party to capitulate without a real hearing in court."  *Gordon*, 625 So. 2d at 63.  Further, the weight of case law from the Florida Supreme Court recognizes the general principle that a threat of lawful criminal prosecution will not constitute duress.  None of the factual scenarios identified in *Burton* or *Sheldon* apply here.

Thus, the district court did not abuse its discretion in denying Appellants' motion to rescind the settlement agreement.

---

[9] We also note that the Second Restatement of Contracts explains that "a threat of criminal prosecution is improper as a means of inducing the recipient to make a contract."  Restatement (Second) of Contracts § 176 (1981).  And, under that Restatement, it is immaterial that the party making the threat "honestly believes that the recipient is guilty" or that the party being threatened is indeed guilty.  *Id*.  Yet simply because the Second Restatement of Contracts provides this rule does not mean that the Florida Supreme Court would choose to follow it.  *See Franklin*, 576 So. 2d at 1373–74 (Sharp, J., dissenting) (recognizing that Florida law does not generally follow the Second Restatement of Contracts on this issue); *but see DK Arena, Inc. v. EB Acquisitions I, LLC*, 112 So. 3d 85, 92 (Fla. 2013); *Pro-Art Dental Lab, Inc. v. V-Strategic Grp., LLC*, 986 So. 2d 1244, 1246 (Fla. 2008).

Similarly, we cannot say the district court abused its discretion in denying Appellants' motion for leave, which we construe as a Rule 59(e) motion. "The only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (per curiam) (quotations omitted). A party cannot use a Rule 59(e) motion "to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Id.* (quotations omitted).

In their Motion for Leave, Appellants largely raised the same arguments as in their Motion to Reopen, although they cited *Berger* and *Franklin* for the first time. But Appellants could have raised *Berger* and *Franklin* before the district court's denial of their Motion to Reopen. As discussed above, there were no manifest errors of law with the district court's decision denying Appellants' request to rescind the settlement agreement. Thus, we cannot say the district court abused its discretion in denying Appellants' construed Rule 59(e) motion.

### III.   CONCLUSION

For these reasons, we affirm the district court's orders.

**AFFIRMED.**